# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SABRE INTERNATIONAL SECURITY, : | |
| : | |
| Plaintiff, : | |
| : | |
| v.                             : | Civil Action No. 11-806 (GK) |
| : | |
| TORRES ADVANCED ENTERPRISE   : | |
| SOLUTIONS, LLC, et al.,       : | |
| : | |
| Defendants.                  : | |

## MEMORANDUM OPINION

Sabre International Security ("Sabre") brings this case against its former business partner, Torres Advanced Enterprise Solutions, LLC ("TAES") and several current and former TAES officers, for breach of contract, tortious interference with prospective economic advantage, fraud, and related torts.

This matter is before the Court on TAES's Motion to Dismiss Counts 15-18 and 20-22 of the First Amended Complaint [Dkt. No. 253]. Upon consideration of the Motion, Opposition [Dkt. No. 262], and Reply [Dkt. No. 269], and the entire record herein, and for the reasons set forth below, the Motion to Dismiss shall be **granted in part** and **denied in part**.

## I.   BACKGROUND

### A.   Factual Background[1]

Sabre is an Iraqi limited liability company with its principal place of business in Baghdad, Iraq. TAES is a limited liability company organized under the laws of Virginia. Both companies provide security services internationally to private and governmental entities.

Between approximately 2007 and 2010, Sabre and TAES worked together to perform security contracts at United States military installations in Iraq. They did so pursuant to two Multiple Award Task Order Contracts ("MATOCs") issued by the United States Government: the Theater-Wide Internal Security Services ("TWISS") MATOC, number W91GDW-07-D-4026 ("TWISS I MATOC"), and its successor, TWISS MATOC number W91DGW-09-D-4030 ("TWISS II MATOC").

Sabre was awarded the TWISS I MATOC on September 27, 2007, and thereby became eligible to compete for specific TWISS I "task orders," which covered specific projects put out for bid by the Government. To aid it in competing for such task orders, on November 8, 2007, Sabre entered into a subcontractor agreement with TAES, under which TAES agreed to provide

---

[1] The facts set forth herein are taken from the First Amended Complaint ("FAC") [Dkt. No. 242] and the undisputed facts set forth in the parties' briefs.

personnel holding valid United States Government security clearances to work on task orders awarded to Sabre under the TWISS I MATOC. The Sabre-TAES team bid for and was awarded several TWISS I Task Orders, which it performed with Sabre acting as prime contractor and TAES acting as subcontractor.

In 2009, the United States amended its policies to require that prime contractors, like Sabre, possess a valid Defense Department Industrial Security Program Facility Security Clearance ("FCL"). Sabre, as a foreign company, was not eligible to obtain an FCL. Conversely, TAES was not eligible to perform TWISS I work without Sabre, because only Sabre, and not TAES, possessed a Private Security Company ("PSC") license issued by the Ministry of the Interior of the Republic of Iraq, which was required to perform private security services in Iraq. Consequently, on December 30, 2009, the parties entered into an Asset Purchase Agreement ("APA") and novation of their subcontractor agreement by which TAES became the prime contractor and Sabre became the subcontractor for TWISS I work. This modification allowed the Team to avoid termination of the TWISS I MATOC.

Under the APA, TAES became responsible for submitting invoices to the Government and for compensating Sabre once it received payment from the Government. The APA also included a

form lease agreement, pursuant to which Sabre would lease to TAES equipment necessary to perform TWISS I work. The APA otherwise adopted the parties' original obligations under the TWISS I subcontractor agreement, including its compensation scheme.

On August 6, 2009, Sabre and TAES entered into a separate Teaming Agreement to govern work under the TWISS II MATOC. As with the APA, the Teaming Agreement designated TAES as the prime contractor and Sabre as the subcontractor. It required, inter alia, that: (1) Sabre and TAES compete exclusively as a team for any TWISS II proposal submitted; (2) both parties approve any such proposal; (3) TAES offer Sabre any TWISS II work awarded within Sabre's Scope of Work, as defined under the Agreement; (4) TAES manage the team's affairs and protect Sabre's rights with respect to the Government; and (5) TAES pay Sabre's invoices within 15 working days after receiving payment from the Government.

Sabre alleges that TAES breached the Teaming Agreement, and committed fraud and various other torts, by, inter alia, (1) unilaterally reducing Sabre's prices in TWISS II proposals and refusing to pay Sabre in accordance with previously agreed-upon pricing schemes; (2) bidding on TWISS II task orders without Sabre's consent or knowledge, and thereafter performing such

-4-

work without Sabre's participation; (3) failing to make timely payment of Sabre's TWISS II invoices; (4) failing to return leased equipment to Sabre and, instead, selling it to one or more third parties; and (5) failing to protect Sabre's legal rights in relation to certain disputes with the Government. Sabre also alleges that TAES breached the APA by failing to fully compensate Sabre for work performed on TWISS I task orders. Sabre further alleges that TAES made a secret internal decision in the spring of 2010 to cease honoring the Teaming Agreement and the APA and instead enter to into direct competition with Sabre.

### B. Procedural Background

Sabre filed its original Complaint on April 29, 2011. On July 5, 2013, approximately three and a half months after the close of fact discovery, Sabre moved to amend its Complaint to add claims of fraud against TAES and several of its officers in light of information obtained during discovery. The Court granted Sabre's Motion to Amend on October 3, 2013, and Sabre filed its FAC on October 10, 2013 [Dkt. No. 242].

On November 14, 2013, TAES filed the instant Motion to Dismiss Counts 15-18 and 20-22 of the FAC [Dkt. No. 253]. On December 6, 2013, Sabre filed its Opposition [Dkt. No. 262]. On December 20, 2013, TAES filed its Reply [Dkt. No. 269].

-5-

## II.   STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face" and to "nudge[ ] [his or her] claims across the line from conceivable to plausible." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563.

Under the Twombly standard, a "court deciding a motion to dismiss must not make any judgment about the probability of the plaintiffs' success . . . [,] must assume all the allegations in the complaint are true (even if doubtful in fact) . . . [, and] must give the plaintiff the benefit of all reasonable inferences derived from the facts alleged." Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc., 525 F.3d 8, 17 (D.C. Cir. 2008) (internal quotation marks and citations omitted). A complaint will not suffice, however, if it "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 557) (alteration in Iqbal).

**III. ANALYSIS**

### A.  Count 15 Fails to State a Claim for Fraud

In Count 15, Sabre brings a claim for "Fraud with Respect to TAES Pricing of and Payment to Sabre for Sabre TWISS II Scope of Work." FAC ¶¶ 265-438. The crux of this claim is that TAES officers Rebekah Dyer, Kathy Jones, Scott Torres, and Jerry Torres pretended, through a series of affirmative representations and misleading omissions, to accept Sabre's price terms for several TWISS II task orders, while secretly reducing these price terms in proposals to the Government and intending not to honor them once Sabre had performed the work. Sabre alleges that TAES' apparent acceptance of its pricing induced it to perform several TWISS II task orders that it would not have performed had it known of TAES' true intent to reduce its prices.

To make out a claim for fraud under District of Columbia law, a plaintiff must allege that: (1) the defendant made a false representation, (2) the representation was in reference to a material fact, (3) the defendant had knowledge of its falsity, (4) the defendant intended to deceive, (5) the plaintiff acted in reliance on the misrepresentation, and (6) the reliance was reasonable. See, e.g., In re U.S. Office Prods. Co. Sec. Litig., 251 F. Supp. 2d 77, 100 (D.D.C. 2003) (citing R & A,

Inc. v. Kozy Korner, Inc., 672 A.2d 1062, 1066 (D.C. 1996); Hercules & Co. v. Shama Rest. Corp., 613 A.2d 916, 923 (D.C. 1992)).[2]

Because disputes relating to contractual obligations "should generally be addressed within the principles of law relating to contracts," the D.C. Court of Appeals has held that "conduct occurring during the course of a contract dispute may be the subject of a fraud[] [claim]" only if (1) "there are facts separable from the terms of the contract upon which the tort may independently rest," and (2) "there is a duty independent of that arising out of the contract itself, so that an action for breach of contract would reach none of the damages suffered by the tort." Choharis v. State Farm and Casualty Co., 961 A.2d 1080, 1089 (D.C. 2008); see also Ulliman Schutte Const., LLC v. Emerson Process Mgmt. Power & Water Solutions, No. 02 Civ. 1987 (RMC), 2006 WL 1102838, at *14 (D.D.C. Mar. 31, 2006) (emphasizing "the conceptual distinction between breach of contract claims and tort claims [which] preclud[es] plaintiffs from recasting ordinary breach of contract claims into tort claims") (citation and punctuation omitted).

---

[2] Both parties cite District of Columbia law and thus appear to agree that such law applies.

TAES argues that Count 15 must be dismissed because it "impermissibly seeks to transform Sabre's breach of contract claims into claims for 'fraud in the performance of a contract.'" Def.'s Mem. at 1. The Court agrees.

The allegations in Count 15 basically claim that TAES falsely assured Sabre it would pay Sabre's invoices (at specific prices) for subcontracting work performed under the Teaming Agreement, thereby inducing Sabre to perform such subcontracting work. Such a claim is entirely intertwined, if not wholly duplicative, of Sabre's claim that TAES breached the Teaming Agreement by reducing Sabre's prices in Government proposals and failing to pay Sabre's invoices in full. See FAC ¶¶ 105, 108, 111-116. Count 15 thus falls squarely within the D.C. Court of Appeals' admonition that "even a 'willful, wanton or malicious' breach of a contract to pay money cannot support a claim of fraud." Choharis, 961 A.2d at 1089 (citing Bragdon v. 2512 Assocs. Ltd. P'ship, 856 A.2d 1165, 1173 (D.C. 2004)).

Sabre now argues, in its Opposition brief, that it has stated a claim for fraud in the inducement, rather than fraud in the execution of a contract, such that Count 15 is not barred by the rule stated in Choharis. There are two problems with this argument. First, as TAES correctly points out, the term "fraud in the inducement" barely appears in the 113-page FAC, and

-9-

certainly not in the lengthy title of this Count. Def.'s Reply at 4. Although this fact is not dispositive of whether Sabre states such a claim, it does indicate that Sabre's reference to a fraudulent inducement theory in its Opposition brief is merely a last-minute effort to avoid the rule of Choharis.

More importantly, in the single instance in which Sabre does recite the phrase "fraudulently induced" in Count 15, it claims to have been "fraudulently induced" to perform its obligations under the Teaming Agreement, rather than to do something it was not contractually required to do. See FAC ¶ 436 ("As a result [of TAES' representations regarding prices] Sabre was fraudulently deprived of the right to refuse to perform and was fraudulently induced into spending millions of dollars [to perform].").[3] Further, Sabre purports to have been injured solely by virtue of TAES' failure to perform an obligation it was contractually obligated to perform under the Teaming Agreement.

---

[3]  Sabre now argues that TAES' representations fraudulently induced it to enter specific task orders. This attempt to recast the parties' relationship as a series of small contracts rather than the overarching Teaming Agreement is contradicted by the allegations of the FAC. As Sabre points out numerous times, the Teaming Agreement required Sabre to perform TWISS II subtask orders. See FAC ¶ 77 ("'[Sabre] shall provide the Team with all personnel and provide all services required by . . . any TWISS TOR awarded to the Team, excepting Leading Members Scope of Work.'") (emphasis added) (quoting Teaming Agreement § 1.2.C).

As such, the allegations of fraud in Count 15 are completely intertwined with TAES' performance of its obligations under the Teaming Agreement, and Sabre's remedy is a contract, not a fraud, remedy. See Choharis, 961 A.2d at 1089 (independent claim for fraud is cognizable only if "there are facts separable from the terms of the contract upon which the tort may independently rest," and "there is a duty independent of that arising out of the contract itself so that an action for breach of contract would reach none of the damages suffered by the tort.") (emphasis added).

For the foregoing reasons, Count 15 shall be dismissed.[4]

### B. Count 16 Fails to State a Claim for Fraud

In Count 16, Sabre alleges that on September 5, and October 18, 2010, it notified the Government that TAES had "breached the Teaming Agreement and owed Sabre millions of dollars on unpaid [] invoices." FAC ¶ 440. The Government, in turn, issued a Letter of Concern to TAES threatening to take administrative and/or remedial action against TAES if its subcontractors had not been paid. In response, on October 24, 2010, TAES represented to the Government that it had paid all amounts due

---

[4] Having concluded that Sabre is limited to a contract remedy, the Court does not reach TAES' alternative argument that the economic loss doctrine independently bars Sabre's Count 15.

to Sabre. Sabre contends this response was knowingly false and was intended "to deceive the U.S. Government into believing" TAES was current on its payments, so as to "prevent the U.S. Government from requiring [TAES] to pay Sabre's invoices[.]" FAC ¶ 442-44. Sabre claims that these circumstances amount to fraud.

As set forth above, the element of reliance is a prerequisite to recovery in fraud. It is not enough to show that the Government relied on TAES' representations; Sabre must show that it justifiably relied on such representations and suffered loss as a result. See Va. Acad. of Clinical Psychologists v. Grp. Hosp. & Med. Servs., Inc., 878 A.2d 1226, 1238 (D.C. 2005) ("[T]he maker of a fraudulent misrepresentation is subject to liability for pecuniary loss suffered by one who justifiably relies upon the truth of the matter misrepresented, if his [or her] reliance is a substantial factor in determining the course of conduct that results in his [or her] loss.") (citing Restatement (Second) of Torts § 546 (1977)).

Sabre does not purport to have relied on TAES' representations to the Government. In fact, it clearly states that it believed its invoices had not been paid and continued to

believe as much notwithstanding TAES' representations otherwise. See FAC ¶440.[5]

Sabre argues that it nevertheless satisfies the reliance requirement because it was entitled to assume that TAES would fulfill its "duty" not to make inaccurate statements to the Government, which purportedly induced it (Sabre) into "not taking further" action in its communications with the Government. Pl.'s Opp'n at 13. This argument shows only that Sabre relied on its own assumptions regarding what TAES would do or say, not on what TAES actually did or said. Because Sabre has not alleged that it relied on TAES' representations to the Government, Sabre does not state a claim for fraud.[6]

---

[5] Sabre cites Nader v. Allegheny Airlines, Inc., 512 F.2d 527, 547-49 (D.C. Cir. 1975) rev'd on other grounds, 426 U.S. 290 (1976), apparently for the proposition that it may recover in fraud based on the Government's reliance on TAES' statements. Nader does not support such a proposition. The Court of Appeals in Nader held merely that a party who relies on a misrepresentation can sometimes recover against its maker even if that party, referred to in the decision as a "third party," is not the intended or direct recipient of the misstatement. See id. at 548; accord Armstrong v. Accrediting Council for Continuing Educ. & Training, Inc., 961 F. Supp. 305, 309 (D.D.C. 1997). The Court of Appeals did not suggest that a plaintiff, such as Sabre, who has not relied on a misrepresentation, can recover for fraud.

[6] Sabre also does not identify any independent harm flowing from TAES' statements. It asserts vaguely that the statements prevented the Government from taking remedial action to cure the underlying breach of contract. FAC ¶ 442-44; see also Pl.'s Opp'n at 12. Sabre cannot spin a fraud claim out of conduct

-13-

Having failed to state a claim for fraud in the first instance, Sabre also does not state a claim for aiding and abetting fraud. Pl.'s Opp'n at 11, 14. See, e.g., Burnett v. Al Baraka Inv. & Dev. Corp., 274 F. Supp. 2d 86, 105 (D.D.C. 2003) ("Liability for aiding and abetting . . . must be tied to a substantive cause of action[.]"). Consequently, Count 16 shall be dismissed.

### C. Count 17 Fails to State a Claim for Misappropriation

In Count 17, Sabre alleges that TAES secretly used its PSC license in a proposal to the Government for work at First Operating Base ("FOB") Cruz Morris, and never informed Sabre that it was submitting such a proposal. Sabre further asserts that, after TAES was awarded the Cruz Morris task order, TAES concealed the award from Sabre and declined to allocate Sabre its rightful share of the work. Such conduct, Sabre maintains, amounts to "fraudulent misappropriation and use of Sabre's PSC license" and entitles it to "lost profits for its scope of the work" at FOB Cruz Morris. FAC ¶¶ 450-51.

---

that merely caused a known contract dispute to remain unresolved. See Choharis, 961 A.2d at 1089 (observing that "the mere disappointment of plaintiff's hope to receive his contracted-for benefit" would not support fraud claim even in the presence of bad faith).

—14—

As TAES rightly points out, Sabre identifies no authority in the District of Columbia recognizing a claim for "fraudulent misappropriation" of a license. Def.'s Mot. at 16. In response, Sabre maintains that it has stated a claim either for fraud or unfair competition. See Pl.'s Opp'n at 14-16.

The fraud theory is easily disposed of. Sabre reasons that TAES, by including a photocopy of Sabre's PSC license in the Cruz Morris proposal, defrauded the <u>Government</u> into believing its use of the permit was authorized when it was not. FAC ¶ 450; Pl.'s Opp'n at 14. As explained above, Sabre cannot recover for fraudulent representations directed at the Government unless it demonstrates that it was aware of such representations and relied on them, which Sabre does not allege. As a result, Count 17 does not state a claim for fraud.

The unfair competition theory also fails. "Unfair competition is not defined in terms of specific elements, but by various acts that would constitute the tort <u>if they resulted in damages</u>." <u>Hanley-Wood LLC v. Hanley Wood LLC</u>, 783 F. Supp. 2d 147, 153 (D.D.C. 2011) (emphasis added) (citing <u>Furash & Co. v. McClave</u>, 130 F. Supp. 2d 48, 57 (D.D.C. 2001)).[7]

---

[7] Activities that may give rise to a claim for unfair competition include "defamation, disparagement of a competitor's goods or business methods, intimidation of customers or employees, interference with access to the business, threats of groundless

-15-

Sabre has not described any way in which its business was damaged by TAES' use of the PSC license in the Cruz Morris proposal. There is no indication, for example, that TAES' conduct injured Sabre's business reputation, impaired its ability to compete for any opportunity, resulted in any loss of good will between Sabre and the Government, or caused any other competitive injury. Sabre alleges only that TAES' use of the license without Sabre's participation violated the exclusivity provisions of the Teaming Agreement and allowed TAES to "unlawfully reap[] profits . . . that could not have been obtained without Sabre." FAC ¶¶ 446, 451. While these allegations may support a claim for breach of contract or unjust enrichment, they do not identify any competitive injury, and therefore do not support a cause of action for unfair competition.

In its Opposition brief, Sabre argues that it did suffer a competitive injury because TAES' conduct deprived it of the "time, labor and talent . . . expended to obtain and successfully use the PSC license in Iraq." Pl.'s Opp'n at 16, This argument finds no support in the FAC. There are no facts

suits, commercial bribery, inducing employees to sabotage, [and] false advertising or deceptive packaging likely to mislead customers into believing goods are those of a competitor." Hanley-Wood LLC, 783 F. Supp. 2d at 153 (citing B & W Mgmt., Inc. v. Tasea Inv. Co., 451 A.2d 879, 881 n.3 (D.C. 1982)).

-16-

suggesting that TAES' use of the license in the Cruz Morris proposal hindered Sabre's ability to use the license in other contexts, threatened its ability to maintain the license, or in any way deprived Sabre of the general benefits of the license.

Because Sabre has not identified any competitive injury resulting from the Cruz Morris incident, it does not state a claim for unfair competition. See Pac. Grp. v. First State Ins. Co., 70 F.3d 524, 529 (9th Cir. 1995) (finding unfair competition theory deficient because, inter alia, plaintiff "did not allege that the false advertising . . . caused its injury") (emphasis added); Yantha v. Omni Childhood Ctr., Inc., No. 13-CV-1948 ARR JMA, 2013 WL 5327516, at *7 (E.D.N.Y. Sept. 20, 2013) (dismissing unfair competition claim because complaint failed to "stat[e] a competitive injury as a result of any unfair competition by defendants").

For the foregoing reasons, Count 17 shall be dismissed.

**D. Count 18 States a Claim for Conversion of Equipment**

In Count 18, Sabre brings a claim for "conversion of Sabre's property and unjust enrichment." Although styled as a single claim, Count 18 is based on two separate incidents, which require independent analysis.

First, Sabre alleges that it temporarily loaned or leased to TAES more than $1 million worth of equipment so TAES could

perform the Team's work at Joint Security Station ("JSS") Shield. According to Sabre, at the conclusion of the JSS Shield job, TAES failed to return the equipment, and instead, sold the property to one or more third parties without Sabre's knowledge or consent. FAC ¶ 455. Sabre contends that these circumstances constitute conversion. The Court agrees.

"The essence of a conversion is a wrongful taking or a wrongful retention of property after a rightful possession." Shehyn v. Dist. of Columbia, 392 A.2d 1008, 1012 (D.C. 1978). To state a claim for conversion under District of Columbia law, the plaintiff must allege "(1) an unlawful exercise, (2) of ownership, dominion, or control, (3) over the personal property of another, (4) in denial or repudiation of that person's rights thereto." Xereas v. Heiss, 933 F. Supp. 2d 1, 6 (D.D.C. 2013) (citing cases); see also Baltimore v. Dist. of Columbia, 10 A.3d 1141, 1155 (D.C. 2011). Each of these elements is met by Sabre's allegations that TAES sold equipment belonging to Sabre to third parties without Sabre's consent.

TAES argues that where, as in this case, a defendant's initial possession of property was lawful, a plaintiff may not recover under a conversion theory unless it establishes that it first made a demand for the property, which Sabre has not done. See Def.'s Mem. at 17 (citing Poullard v. Smithkline Beecham

Corp., No. 02 Civ. 1590 (CKK), 2005 WL 3244192, at \*12 (D.D.C. Nov. 30, 2005)). However, the D.C. Court of Appeals has observed that "[a] demand for the return of property 'is necessary only when there are no other facts and circumstances independently establishing a conversion.'" Washington Gas Light Co. v. Pub. Serv. Comm'n of D.C., 61 A.3d 662, 678 (D.C. 2013) (emphasis added) (citing Bowler v. Joyner, 562 A.2d 1210, 1212 (D.C. 1989)). TAES' purported sale of Sabre's equipment to one or more third parties without Sabre's consent would "independently establish" its repudiation of Sabre's property rights. Therefore, no demand was required.[8]

Sabre's second theory is that TAES' use of its PSC license in the Cruz Morris proposal constituted conversion. As discussed, there are no facts indicating that Sabre lost any of the benefits of its license because of TAES' inclusion of the PSC license in the Cruz Morris proposal. Consequently, Sabre has not stated a claim for conversion of its PSC license. See

---

[8] TAES also claims that it had a lease agreement with Sabre, which limits Sabre to a contract remedy because a plaintiff "may not cloak a breach of contract claim in the dress of conversion." Def.'s Mem. at 17. Sabre is not recasting a contract claim as one for conversion; its allegations give rise to a claim for conversion independent of any contract remedies it may also have. See Sloan ex rel. Juergens v. Urban Title Servs., Inc., No. 06 Civ. 1524 (CKK), 2011 WL 1137297, at \*7 (D.D.C. Mar. 27, 2011).

Kaempe v. Myers, 367 F.3d 958, 964 (D.C. Cir. 2004) ("Where there has been no dispossession of property rights, there can be no action for conversion.").[9]

For the foregoing reasons, Count 18 shall be dismissed insofar as it alleges conversion of Sabre's PSC license, but not insofar as it alleges conversion of Sabre's equipment.

## E.   TAES' Motion to Dismiss Count 20 is Moot

Count 20 is styled as a claim for "Misappropriation of Sabre's Past Performance." However, in Sabre's Reply brief in support of its Motion to Amend the Complaint, Sabre voluntarily withdrew this count. See Pl.'s Reply ISO Mot. to Amend at 2 n.1 [Dkt. No. 239] ("On further reflection, Sabre is voluntarily withdrawing Count 20, 1AC ¶¶ 470-77[.]"). TAES' Motion to Dismiss Count 20 is therefore moot.[10]

## F.   Count 21 Is Duplicative of Count 3

In Count 21, Sabre brings a claim for "lost [] revenues and delay damages" resulting from TAES' inability to timely perform the task order at JSS Shield in early 2010. Sabre acknowledges

---

[9] Sabre argues, in the alternative, that TAES was unjustly enriched by virtue of having used the PSC license to win the task order at FOB Cruz Morris. Because Count 8 of the FAC already alleges unjust enrichment with respect to the Cruz Morris job, any assertion of such theory in Count 17 is merely duplicative. See FAC ¶ 222(B).

[10] It is unclear why Sabre did not remove this claim from its FAC prior to filing it.

-20-

that this count is based on the same facts and the same legal
theory as the breach of contract claim alleged at Count 3. Pl's
Opp'n at 21. At best, Counts 3 and 21 articulate a slightly
different theory of harm resulting from the same breach of
contract. Consequently, Count 21 shall be dismissed as
duplicative of Count 3. Cf. Fed. R. Civ. P. 10(b) ("[E]ach
claim founded on a separate transaction or occurrence . . . must
be stated in a separate count[.]").

### G. Count 22 Fails to State a Claim for Fraud

Finally, in Count 22, Sabre brings another claim of
"fraud," which relates, not to the parties' performance of TWISS
work under the relevant agreements, but to TAES' conduct in this
litigation. In particular, Sabre contends that TAES, with the
assistance of its prior counsel, defrauded Sabre in this action
by concealing material evidence, filing knowingly false
declarations, fabricating evidence, and mounting defenses it
knew were not supported by the evidence. See FAC ¶¶ 499, 501,
506. Sabre claims it was damaged "by virtue of having [ ]
devoted substantial resources, time and money (including payment
of attorneys fees) to defend against" TAES' assertedly
fraudulent claims and defenses. FAC ¶ 505.

At the outset, the Court emphasizes that the misconduct
alleged in Count 22 is extremely serious, and the Court's

-21-

disposition of this count is not intended to suggest that Sabre is without recourse in other venues for such misconduct should it be proven. The narrow question presented, however, is whether Sabre's allegations state a claim for fraud or any other cause of action. The Court concludes that they do not.

First, as with the fraud claims in Counts 16 and 17, there is no allegation that Sabre relied, to its detriment, on any of the allegedly false representations and omissions made by TAES in this lawsuit. To the contrary, Sabre has vigorously contested the factual underpinnings of TAES' defenses and steadfastly adhered to its version of the facts throughout. Sabre also persisted in its attempts to obtain discovery from TAES when documents were not immediately forthcoming, and appears now to have obtained the documents that were not previously produced. Thus, it is clear Sabre did not rely on the truth of any of the alleged misrepresentations, and without such reliance, Sabre does not state a claim for fraud. Cf. Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 71 (2d Cir. 1990) (justifiable reliance is essential element of an "ordinary common-law fraud action" even where plaintiff alleges bad faith litigation).

Second, and more broadly, Sabre cites no authority suggesting that it may maintain any independent cause of action

for the misconduct alleged in Count 22. Sabre relies on Jemison v. Nat'l Baptist Convention, USA, Inc., 720 A.2d 275 (D.C. 1998) and Chambers v. NASCO, Inc., 501 U.S. 32, 50 (1991)). These cases merely affirm a court's inherent power to sanction a party for misconduct during the course of the litigation; they do not hold, or even intimate, that such behavior supports an independent cause of action for damages. See Chambers, 501 U.S. at 43-55; Jemison, 720 A.2d at 282 (a court "may safely rely on its inherent power to sanction those who engage in bad faith conduct in the course of litigation") (citing Chambers, 501 U.S. at 50).

Nor has the Court discovered any case holding that bad faith conduct in litigation gives rise to an independent cause of action for damages. The weight of the authority is contrary. See Russell v. Principi, 257 F.3d 815, 821 (D.C. Cir. 2001) ("Plaintiff's] effort to pursue an independent cause of action for bad faith litigation abuse against [defendant] fails. . . . [T]o date no circuit court has held that a federal cause of action exists"); Interstate Fire & Cas. Co., Inc. v. 1218 Wisconsin, Inc., 136 F.3d 830, 836 (D.C. Cir. 1998) (rejecting a tort claim for "fraud on the court" because "[a]lthough the act complained of is styled a 'fraud,' the remedy lies within the court's equitable discretion") (citations omitted); see also

-23-

<u>Ortega v. City of New York</u>, 9 N.Y.3d 69, 83 (2007) (declining to recognize independent tort for spoliation of evidence because such conduct is adequately addressed through range of remedial options available to court).

Given that Sabre may seek relief for the misconduct alleged in Count 22 pursuant to Rule 37 of the Federal Rules of Civil Procedure and the Court's inherent powers, Count 22 shall be dismissed.

## IV. CONCLUSION

For the foregoing reasons, TAES' Motion to Dismiss shall be **granted in part** and **denied in part**. An Order shall accompany this Memorandum Opinion.

January 30, 2014

_Gladys Kessler_
Gladys Kessler
United States District Judge

<u>Copies to</u>: attorneys on record via ECF