IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SABRE INTERNATIONAL SECURITY )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>TORRES ADVANCED ENTERPRISE )<br>SOLUTIONS, LLC, *et al.* )<br>)<br>Defendants. )<br>_____) | Case 1:11-cv-00806-GK-DAR |

**REPLY IN SUPPORT OF SPECIALLY APPEARING DEFENDANTS
REBEKAH DYER'S, SCOTT TORRES'S AND KATHRYN JONES'S MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDICTION**

**I.    There is no basis for the exercise of general jurisdiction pursuant to D.C. Code
§ 13-422 or specific jurisdiction pursuant to D.C. Code § 13-423 over these
defendants.**

Sabre International Security ("Sabre") makes no allegations in its Amended Complaint that Rebekah Dyer ("Ms. Dyer"), Scott Torres ("Mr. Scott Torres") or Kathryn Jones ("Ms. Jones") (together the "Individual Defendants") is subject to general jurisdiction under D.C. Code § 13-422.  Further, Sabre does not rebut Ms. Dyer's January 1, 2014 Declaration ("Dyer Declaration") (Dkt. #276-1),  Mr. Scott Torres's January 2, 2014 Declaration ("Scott Torres Declaration") (Dkt. #276-2) or Ms. Jones's January 4, 2014 ("Jones Declaration") (Dkt. #276-3) that state unequivocally that each of them is not domiciled in the District of Columbia (the "District").   Sabre also does not rebut Ms. Dyer's and Mr. Scott Torres's Declarations that state unequivocally that each of them does not have a principal place of business in the District.[1]

---

[1] In regard to Ms. Dyer, Sabre implies that she could have other personal business contacts in the District that could somehow lead to the proper exercise of this Court's exercise of general jurisdiction over her, such as those related to her part-time enrollment at Georgetown University. Opp. at 9. That enrollment is irrelevant as it neither establishes a domicile nor principal place of business in the District.

Therefore, there is no basis for the assertion of general personal jurisdiction over Ms. Dyer and Mr. Scott Torres pursuant to D.C. Code § 13-422.

While Sabre does argue that Ms. Jones's former employment in the District is sufficient to confer this Court's personal jurisdiction over her, as discussed in Section II below, that employment does not form a sufficient basis for assertion of the Court's general jurisdiction over Ms. Jones.

Furthermore Sabre has raised no factual basis or even any argument to contest the Dyer Declaration, the Scott Torres Declaration or the Jones Declaration which establish that each of the Individual Defendants lacks the type of personal contacts with the District necessary to support the exercise of specific jurisdiction under the D.C. long-arm statute, D.C. Code § 13-423. While Sabre enumerates the circumstances under which jurisdiction is conferred pursuant to the D.C. long-arm statute, in its 26 page Opposition Sabre makes no mention of any facts that would support the exercise of jurisdiction over the Individual Defendants pursuant to that statute.  Sabre fails to acknowledge that the scope of "relevant contacts" that qualify as a basis for the assertion of personal jurisdiction under the D.C. long-arm statute is limited to contacts which give rise to Sabre's claims against each of the Individual Defendants in its First Amended Complaint ("FAC").  *FC Inv. Grp. LC v. IFX Mkts., Ltd.*, 479 F. Supp. 2d 30, 39 (D.D.C. 2007), *aff'd*, 529 F.3d 1087 (D.C. Cir. 2008) ("plaintiff's jurisdictional allegations must arise from the same conduct of which it complains").  This failure is fatal to Sabre's argument because Sabre has not alleged that the Individual Defendants had contacts in the District that give rise to its claims.

**II.     Ms. Jones did not have a principal place of business in the District and the exercise of general jurisdiction over her would therefore be improper.**

In an effort to extend the reach of D.C. Code § 13-422, Sabre claims that the Court should find that because Ms. Jones was an employee of TSymmetry in the District she had a

2

principal place of business there.  Opp. at 5.  Ms. Jones worked for TSymmetry from February 1, 2011 to November 18, 2013, after she left her employment with Torres Advanced Enterprise Solutions, LLC ("TAES").   Jones Decl. ¶¶ 4, 6.   She was not an owner, shareholder or director of TSymmetry.  *Id.* at ¶ 4.   Her employment with TSymmetry was terminated on November 18, 2013 because her job was eliminated.  *Id.*  ¶ 5.  Sabre filed the FAC on October 10, 2013.  (Dkt. # 242)  Sabre's Rule 4 Waiver of Service for Ms. Jones (Dkt. #255) was dated November 20, 2013.   At that time, Ms. Jones was no longer employed in the District.

An individual's employment in the District does not constitute a principal place of business for purposes of D.C. Code § 13-422.  In *Pollack v. Meese,* 737 F. Supp. 663 (D.D.C. 1990), after noting that the plaintiff bears the burden of pleading and proving sufficient facts upon which to find personal jurisdiction, this Court found that individuals who worked in the District but lived outside the District were not subject to the Court's jurisdiction on the basis of D.C. Code  § 13-422.   Specifically, the Court ruled:

> *D.C. Code § 13-422* provides the bases for personal jurisdiction over residents or those incorporated in the District of Columbia.  It allows a District of Columbia court to:
>
>    . . . exercise personal jurisdiction over a person domiciled in, organized under the laws of, or maintaining his or its principal place of business in the District of Columbia as to any claim for relief.
>
> Here, defendants Wilkerson, Quinlan, and Meese reside in Virginia, and defendant Turner resides in Missouri. Thus*, since none of the defendants reside or are incorporated in the District of Columbia, personal jurisdiction cannot be found on the basis of § 13-422.*
>
> In order to establish personal jurisdiction, therefore, plaintiff must show that the nonresident defendants had the requisite contacts with the District of Columbia [pursuant to the D.C. long-arm statute].  [emphasis added]

*Id. at* 665.

3

Next, the Court, in construing the D.C. long-arm statute, explained that:

> As to defendants Meese, Quinlan, and Wilkerson, they also do not (or, more accurately, did not) transact any business in the District of Columbia. Although the Department of Justice's principal place of business may be in the District of Columbia, these defendants do not transact their individual business in the District of Columbia or maintain their individual places of business in the District of Columbia.

*Id.*

Thus, this Court has recognized, as did the District of Columbia Superior Court in *T.M.P. v. G.C.M.,* 124 DAILY WASH. L. REP. 233, 235 (D.C. Super. Ct. 1996),[2] that individuals employed in the District do not, by virtue of their employment, maintain individual places of business in the District.

In support of its "principal place of business" argument, Sabre relies on *Cameron v. Thornburg,* 983 F.2d 253 (D.C. Cir. 1993) and *FCNB Spiegel, Inc. v. Dimmick*, 619 N.Y.S. 2d 935, 937 (N.Y. Civ. Ct. 1995). In *Cameron,* a federal inmate brought a *Bivens* action for injunctive relief and an action for damages by the United States Attorney General and federal prison officials, including the Director of the Federal Bureau of Prisons, J. Michael Quinlan. After finding that claims against certain of the prison officials should be transferred to a district where venue was proper and dismissing the complaint against the Attorney General and Mr. Quinlan for failure to state a claim, *id*. at 257-58, the *Cameron* Court explained in a footnote:

> Although the district court in *Pollack v. Meese,* 737 F. Supp. 663 (D.D.C. 1990), determined under the laws of the District of Columbia that it did not have personal jurisdiction over Michael Quinlan . . . we conclude that D.C. CODE ANNOTATED § 13-422, which provides for general personal jurisdiction over any persons who 'maintain[s] his or its principal place of business in

---

[2] Despite Sabre's argument to the contrary, the issue of personal jurisdiction pursuant to D.C. Code § 13-422 was before the District of Columbia Superior Court in *T.M.P.* v. *G.C.M.* when it found that "Likewise, D.C. Code § 13-422 respecting personal jurisdiction based on an 'enduring relationship' with the District, is inapplicable because the Respondent is not 'a person domiciled in or maintaining his principal place of business in' D.C. for these purposes." *T.M.P.* at 235.

> the District' . . . does give this court personal jurisdiction over Quinlan whose office was located in the District.

*Cameron* at 258 n. 4.  The *Cameron* Court neither overruled nor modified *Pollack* and *Pollack* has been favorably cited for its holdings on personal jurisdiction in subsequent opinions by this Court.  *See, e.g., Surlock v. Lappin*, 870 F. Supp. 2d 116, 121 (D.D.C 2012).

*FCNB Spiegel, Inc. v. Dimmick*, 619 N.Y.S. 2d 935, 937 (N.Y. Civ. Ct. 1995), also relied on by Sabre, is distinguishable. The New York court in that case applied a New York statute, CPLR 301, to find that it had jurisdiction over a New Jersey resident who commuted to New York.  CPLR 301 provides that "[a] court may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore." The jurisdictional test that the New York court applied under that statute was whether or not the defendant was "doing business" in New York, *FCNB Spiegel, Inc.* at 937-38, not whether or not she had a principal place of business there, which is the test under D.C. Code § 13-422.

Sabre claims that that two cases cited by the Individual Defendants, *Higgins v. State Loan Co.,* 114 F.2d 25 (D.C. Cir. 1940) and *In re Lippart,* 201 F. 103, (S.D.N.Y. 1912) are bankruptcy cases that do not construe D.C. Code § 13-422 and are therefore inapposite. Opp. at 5.  Yet, the language of the section of the bankruptcy code at issue in those cases contained the phrase "principal place of business" and in each case the court addressed the issue of whether an individual's place of employment constitutes a "principal place of business."  It does not.

In *Higgins*, in deciding what constitutes a "principal place of business" pursuant to the jurisdictional statute governing bankruptcy filings, the court held that an individual does not have a place of business in a jurisdiction because he is employed by another there.  *Higgins* at 27.  The court explained that a "principal place of business" means a place where an individual has a business of his own.  *Id.*

In the case of *In re Lippart,* the petitioner invoked the jurisdiction of the bankruptcy court on the basis that he worked in New York City. *In re Lippart* at 104. The first question the court considered was whether the petitioner, due to his employment in New York City, had a principal place of business there. *Id.* The Southern District of New York ruled that being employed in New York City did not constitute having a principal place of business there. In its ruling, the court found:

> 'Place of business' mean[s] a place where a man is conducting a business of his own in which he is a principal. . . . the statute contemplated 'place of business' as applying only to those who have a business of their own, but in this case it is only necessary to decide that a clerk, such as this bankrupt did not have a place of business anywhere and should have filed his petition at the place where he resided or had his domicile.

*Id.* at 105.

Admittedly, Ms. Jones was employed in the District by TSymmetry from February 1, 2011 through November 18, 2013. She was not an owner, shareholder or director of that business, but was merely an employee. As an employee of TSymmetry in the District she did not – and could not – have a principal place of business there. Therefore her employment does not form a basis for the exercise of general jurisdiction over her pursuant to D.C. Code § 13-422.

## III. The forum selection clause in the Teaming Agreement does not make the Individual Defendants subject to the jurisdiction of this Court.

Sabre resorts to arguing that the Individual Defendants are subject to this Court's jurisdiction by virtue of TAES's purported connections to the District which Sabre claims are the following: (1) Sabre and TAES signed a Teaming Agreement – which the Individual Defendants neither signed nor were a party to – that included a forum selection clause; and (2) TAES retained a District based attorney. Sabre argues that these connections should be "attributed" to the Individual Defendants because they each are or were "more than an employee" of TAES.

6

Notably, Sabre has abandoned the assertion it raised in its Opposition to Defendant Jerry Torres's Motion to Dismiss (Dkt. #260) that TAES had an office in the District.

Sabre attempts to "attribute" TAES's consent to jurisdiction to each of the Individual Defendants. Sabre claims, without support, that TAES's voluntary consent to this Court's jurisdiction by virtue of the forum selection clause of the Teaming Agreement makes the Individual Defendants subject to the jurisdiction of the Court. Opp. at 8. However, when personal jurisdiction is based solely on an agreement in a contract to submit to jurisdiction, it is only binding on the parties to the contract, not non-parties.

Sabre has not cited a single case, and we have not found one, in which a District of Columbia court has held that a forum selection clause in a contract signed by a company can serve as the basis for exercising personal jurisdiction over officers, directors or employees of that company who did not sign the contract. The forum selection cases that Sabre cites, *Marra v. Papandreou, 216 F.3d. 119, 1123* (D.C. Cir. 2000) and *Water & Sand Int'l Capital, Ltd. v. Capacitive Deionization Tech. Sys. Inc.,* 563 F. Supp. 2d 278, 282-83 (D.D.C. 2008) merely stand for the proposition that a signatory is bound by a forum selection clause in a contract executed by the signatory. Courts within this jurisdiction have refused to enforce forum selection clauses against third-parties. *Shaheen v. Smith,* No. 12-1168, 2013 WL 5995619 * 12 (D.D.C. Nov. 13, 2013); *Naegele v. Albers,* 355 F. Supp. 2d at 129,139 (D.D.C. 2005).

Sabre cites three cases outside this jurisdiction for the proposition that forum selection clauses can bind non-signatories, Opp. at 24, but each one is distinguishable.

In *Hadley v. Shaffer*, 2003 WL 21960406 (D. Del. 2003), the court held that there was personal jurisdiction over the Chairman of the Board because (1) he was a third-party beneficiary (shareholder) of the merger agreement; (2) the merger agreement required his signature to be

7

final; (3) he was actively involved in the negotiations that led to the Merger Agreement; (4) he successfully argued that the forum selection clause required dismissal of a previous case; and (5) he sued as a third-party beneficiary to seek compensation for breaches of the merger agreement. Here, the Individual Defendants did not sign, are not third-party beneficiaries of, and have never asserted that the Teaming Agreement applies to them in their personal capacities; rather, they assert that the Teaming Agreement does not apply to them individually.

*Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509 (9th Cir. 1988) involved claims arising from the termination of a North American distributor of Gucci accessories. The distribution agreement between the North American distributor and a Gucci Italian affiliate (Gucci Parfums) included a forum selection clause requiring litigation "regarding interpretation or fulfillment" of the contract to be conducted in Italy. The plaintiff argued that the forum selection clause should not apply to its tort claims. *Manetti-Farrow,* a forum *non coveniens* case, simply had nothing to do with jurisdiction over an out of state defendant; instead, the court was faced with the issue of whether the plaintiff, who signed an agreement containing a forum selection clause, was bound by the clause for all of its claims.

In *Nanopierce Techs., Inc. v. Southrise Capital Mgmt. LLC*, 2003 WL 22882137 at *5 (S.D.N.Y. Dec. 4, 2003), a securities case based on misrepresentations made by a publicly-traded corporation, the non-party who was bound by the forum selection clause was the corporation's chief financial officer, who as a signatory of the corporation's registration statement had a duty to comply with federal securities laws. Given these prescribed duties, her conduct was deemed "closely related" to the stock purchase at issue in the lawsuit. No case within this district has applied this "closely related" test to confer personal jurisdiction over a non-party, non-signatory to a forum selection clause.

Sabre's attempt to distinguish *Shaheen v. Smith*, No. 12-1168, 2013 WL 5995619 (D.D.C. Nov. 13, 2013) as irrelevant is without merit. Opp. at 24-25. In *Shaheen,* the plaintiff, an employee of a law firm, argued that a forum selection clause between the law firm and the defendant conferred jurisdiction upon the Court. *Shaheen* at *10-11. The plaintiff was not a party to the forum selection clause. The Court found plaintiff's argument non-persuasive because "a forum selection clause is . . . a distinct contract between the parties to settle disputes in a particular forum." *Id.* (*quoting Marra v. Papandreou*, 216 F.3d 1119, 1123 (D.C. Cir. 2000)). While the law firm was a party to the clause, it was not a party to the suit; therefore, the forum selection clause did not apply. *Id.*

In its attempt to distinguish *Shaheen*, Sabre correctly notes that "[t]he court disagreed [with plaintiff], finding that plaintiff had not submitted any evidence showing that defendant had contracted and agreed to the forum selection clause." Opp. at 24. That is precisely the point. Sabre has not alleged and cannot allege that the Individual Defendants contracted and agreed to the forum selection clause at issue. Sabre merely sets forth the conclusory allegation that the Individual Defendants are bound by the clause. FAC ¶ 8. Simply put, Sabre fails to allege that the Individual Defendants agreed to the clause, signed the Teaming Agreement which contained the clause, or even saw the clause at the time TAES signed the Teaming Agreement. The Individual Defendants are not parties to the forum selection clause; therefore, they are not bound by it.

## IV.   TAES's alleged contacts with the District do not confer jurisdiction over the Individual Defendants.

Sabre also attempts to "attribute" TAES's contacts with the District to the Individual Defendants. Sabre notes that TAES contracted with a lawyer located in the District who provided representation to TAES in connection of the TWISS II program before the instant

action was filed. Opp. at 8. The fact that TAES hired a District based attorney does not establish this Court's exercise of personal jurisdiction over the Individual Defendants. *Staton v. Looney*, 704 F. Supp. 303, 304-05 (D.D.C. 1989) (holding that that fact that defendants retained local counsel did not constitute doing business in the District and was not a basis for the exercise of personal jurisdiction over them). Interestingly, Sabre offers no legal support for its attribution argument in this regard.

Again, Sabre fails to appreciate the scope of the D.C. long-arm statute. A proper reading of the statute makes clear that TAES's hiring of a District based attorney is completely irrelevant here. *FC Inv. Grp. LC v. IFX Mkts., Ltd.*, 479 F. Supp. 2d 30, 39 (D.D.C. 2007), *aff'd*, 529 F.3d 1087 (D.C. Cir. 2008) ("plaintiff's jurisdictional allegations must arise from the same conduct of which it complains").

**V.    The "more than an employee" exception to the fiduciary shield doctrine does not apply to the Individual Defendants as the only basis for jurisdiction over TAES is the forum selection clause.**

In an attempt to bolster its "attribution" argument, Sabre claims that Ms. Dyer, Mr. Scott Torres and Ms. Jones are "more than employees" and, therefore, because TAES is subject to this Court's personal jurisdiction by virtue of the forum selection clause they are as well. Specifically, Sabre argues that "for purposes of personal jurisdiction under the 'more than an employee' doctrine, the connections of TAES with the District of Columbia are attributed to each such defendant; accordingly, by attribution, each such defendant is deemed to have engaged in sufficient contacts with the District of Columbia to merit this Court's exercise of personal jurisdiction over each such defendant." Opp at 1. Sabre is incorrect. The "more than an employee" exception does not apply here. Sabre has cited no case, and we have found none, where a court within this jurisdiction has applied the "more than an employee" exception to a

non-signatory individual defendant based on a forum selection clause in an agreement signed by a defendant's employer.

Courts have only applied the "more than an employee" exception to individual defendants where the corporation has sufficient contacts within the District which satisfy general or specific jurisdiction and also satisfy Due Process. None of the cases cited by Sabre involve facts in which, like here, the sole basis for personal jurisdiction over the employer is a forum selection clause in a contract signed solely by the employer.

The "more than an employee" cases Sabre cites as support for its "attribution" arguments address circumstances in which (a) the employer had sufficient, continuous contacts with the District such that maintenance of the suit did not offend traditional notions of fair play and substantial justice;[3] or (b) the employer was a foreign corporation doing substantial business in the District;[4] or (c) the effects of individual employee defendants' out of state tortious conduct was suffered in the forum;[5] or (d) the employer was subject to the court's specific jurisdiction

---

[3] Sabre relies on *Nat'l Cmty. Reinvestment Coal v. Novastar Fin'l Inc.,* 631 F. Supp. 2d 1, 5-8 (D.D.C. 2009) for its "more than an employee" argument. Sabre notes that in *Novastar* the Court exercised jurisdiction over an officer of the corporation who developed and implemented the corporation's discriminatory policies at issue in the case. Opp. at 4. Sabre fails to note that between 1999 and 2007 NovaStar received 3,021 loan applications from D.C. residents and 1,230 of those applications were approved with loans made. The Court explained that the pattern of accepting applications from and making loans to District residents constituted purposeful establishment of minimum contacts with the District such that this Court's exercise of jurisdiction would not offend traditional notions of fair play and substantial justice. *Nat'l Cmty. Reinvestment Coal v. Novastar Fin'l Inc.*, 604 F. Supp. 2d 26, 30 (D.D.C. 2009).

[4] In *Azamar v. Stern,* 662 F. Supp. 2d 166, 173-74 (D.D.C. 2009), a case brought by employees of a foreign corporation, many of whom performed the services at issue within the District, the Court found that pursuant to D.C. Code § 13-334(a) it had jurisdiction over the foreign corporation which itself was doing substantial business in the District.

[5] In *Calder v. Jones*, 465. U.S. 783 (1984), a libel action was brought in California by a California resident against a national magazine published by a Florida corporation with a large circulation in California. The California resident claimed that she had suffered harm in California from an article published by the magazine. A Florida reporter and a Florida editor, employees of the Florida corporation, were also sued. They claimed that they were not subject to the jurisdiction of the California court. However, the allegedly libelous story concerned the California activities of a California resident, the article was drawn from California sources and the harm was suffered in California. The Court noted that the reporter and editor were correct that their contacts with the forum were not to be judged according to their employer's activities there and that their employment did not isolate them from jurisdiction. Rather, each individual defendant's contact with the forum was required to be assessed individually. In *Calder v.*

11

under the long arm statute because it transacted business in the forum relating to the cause of action asserted.[6]

None of those facts exist here.  TAES does not have continuous, systematic contacts with the District.  TAES does not do substantial business in the District.  The alleged harm suffered by Sabre was not suffered in the District, but in Iraq.  Sabre's argument that Ms. Dyer, Mr. Scott Torres and Ms. Jones are subject to this Court's jurisdiction because TAES agreed to a forum selection clause is without merit.  Furthermore, Sabre's assertion that the Individual Defendants are "more than employees" and are therefore subject to this Court's jurisdiction – an argument to which it devotes 17 pages of its brief – is irrelevant.

Corporate officer or senior executive status alone is not sufficient to confer personal jurisdiction.  *NovaStar*, 631 F. Supp. 2d at 13 ("It is clear from these decisions that an individual's role as a corporate officer, without more, is not a sufficient basis for exercising personal jurisdiction over the officer in his individual capacity.").  For example, in *Richards v. Duke University*, 480 F. Supp. 2d 222 (D.D.C. 2007), the plaintiff claimed that Microsoft Corporation joined a conspiracy to conduct surveillance of the plaintiff because Mr. William Gates (CEO/President of Microsoft) was physically attracted to plaintiff and was planning to leave his wife.  *Id.* at 229.  This Court refused to find that it had personal jurisdiction over Mr. Gates because he did not have sufficient minimum contacts within the District in his personal capacity.  *Id.* at 230; *see also D'Onofrio v. SFX Sports Group*, 534 F. Supp. 2d 86, 92-93

---

*Jones*, the facts led the Court to conclude that the reporter and editor were primary participants in an alleged wronging in California intentionally directed toward a California resident; therefore, the jurisdiction of the California court over them was proper on that basis.  *Id.* at 790.

[6] In *Covington & Burling v. Int'l Mktg & Research, Inc., 2003 D.C. Super. Lexis 29 (D.D.C. April 17, 2003),* the plaintiff was a law firm located in the District which sought damages under the Telephone Consumer Protection Act of 1991 as a result of the defendants' transmission of 1,634 unsolicited advertising faxes to the law firm's District office.  The court found that the defendant company had purposely availed itself of the privilege of conducting business in the District by sending the 1,624 faxes to the law firm's office.  *Id.* at *17.

(D.D.C. 2008) (refusing to find personal jurisdiction over the Chief Financial Officer and Head of Human Resources under the "more than an employee" exception). This Court has been willing to find that it had personal jurisdiction over corporate executives under the "more than an employee" exception only where the corporation has sufficient contacts within the District to satisfy general or specific jurisdiction – which is not the case here.

The Individual Defendants are not "more than employees" and Sabre's citations to their deposition transcripts do not establish that any of them had the type of control over the overall business operations and policy decisions of TAES that would subject them to jurisdiction under the "more than employee" exception.[7] This is not one of those rare cases where the exception should apply.[8] But even if the Individual Defendants were "more than employees," the only reason why Sabre was able to bring an action against TAES in the District was because TAES agreed in the forum selection clause to jurisdiction in the District, not because of business TAES transacted business in the District. The Individual Defendants were not parties that that contract. The parties to the contract, Sabre and TAES, did not include language in the forum selection clause referring to officers and employees (assuming they could even do so without authority from the non-parties they wished to bind). The Court simply does not need to reach the issue of whether the Individual Defendants are "more than employees."

## VI.   Sabre's request for jurisdictional discovery as to the Individual Defendants should be denied.

Sabre has failed to meet is burden under either the general jurisdiction or D.C. long-arm statutes and is now grasping at straws seeking unsupported jurisdictional discovery regarding

---

[7] In support of their argument that each of the Individual Defendants was "more than an employee" of TAES, Sabre attached 53 exhibits to its Opposition, including deposition testimony, various documents and e-mails. Sabre's interpretation of these exhibits repeatedly mischaracterizes their content and significance. In short, these exhibits do not support all of the many conclusions Sabre attempts to draw from them.

[8] *See* the Individual Defendants' Motion to Dismiss (Dkt. # 276), at 8-11.

irrelevant contacts.  This case was filed in on April 29, 2011, almost three years ago.  Sabre has had more than an ample opportunity to propound discovery in this matter.  It has conducted lengthy depositions of each of the Individual Defendants.  In fact, 12 pages of its 26 page opposition are dedicated to quoting excerpts from each of the Individual Defendant's deposition testimony.  Despite its participation in years of written discovery and the opportunity to depose each of the Individual Defendants at length, Sabre has failed to allege any facts that support the exercise of jurisdiction over the Individual Defendants.  Its only jurisdictional allegation is a conclusory one – that the Individual Defendants are subject to the jurisdiction of the Court by virtue of the forum selection clause between Sabre and TAES.  FAC ¶ 8.

Sabre cites *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1351-52 (D.C. Cir. 2000) for the proposition that this Court can grant jurisdictional discovery.  Sabre fails to mention, however, that in *GTE New Media* the court held that jurisdictional discovery is justified only "if a party demonstrates that it can supplement its jurisdictional allegations through discovery."  *Id.* at 1351.  Here, Sabre has not demonstrated that it can supplement its jurisdictional allegations through discovery.  Sabre's request for jurisdictional discovery should be denied.

### VII.   The Individual Defendants' Motion to Dismiss should be granted.

The Court's personal jurisdiction over TAES in the District of Columbia by virtue of the forum selection clause in the Teaming Agreement does not give the Court jurisdiction over the Individual Defendants.  Sabre has failed to establish a *single relevant contact* of either TAES or the Individual Defendants within the District that gives this Court general or specific jurisdiction over them.

For the reasons set forth in this reply and the Individual Defendants' motion to dismiss and memorandum in support thereof, Sabre's claims against each of the Individual Defendants should be dismissed.

February 6, 2014                              Respectfully submitted,

*/s/ Patricia E. Bruce*
Patricia E. Bruce, Esq., DC Bar No. 448411
R. Scott Caulkins, Esq., DC Bar No. 369068
CAULKINS & BRUCE, PC
2300 Wilson Blvd., Suite 240
Arlington, VA 22201
Telephone: (703) 558-3670
Facsimile: (703) 525-1331
pbruce@caulkinsbruce.com
scaulkins@caulkinsbruce.com
*Counsel for Specially Appearing Defendants*
*Rebekah Dyer, Scott Torres and Kathryn Jones*

**CERTIFICATE OF SERVICE**

      I hereby certify that on the 6th day of February 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Michael Allan Gordon, Esq.
MICHAEL A. GORDON, PLLC
1629 K Street, N.W., Suite 300
Washington, D.C. 20006
(202) 508-1464 Telephone
(202) 349-1701 Facsimile
Mgordon202@aol.com
*Counsel for Plaintiff*

Timothy B. Mills, Esq.
MAGGS & MCDERMOTT, LLC
910 17th Street, N.W., Suite 800
Washington, D.C. 20006
(202) 457-8090 Telephone
(202) 478-5081 Facsimile
timothybmills@aol.com
*Counsel for Plaintiff*

Tennant David Magee, Esq.
MAGGS & MCDERMOTT, LLC
800 Old Bridge Road
Brielle, N.J. 08730
(732) 223-9870 Telephone
(732) 223-7367 Facsimile
tdmagee@yahoo.com
*Counsel for Plaintiff*

Peter Cohen, Esq.
CHARLSON, BREDEHOFT, COHEN & BROWN, PC
11260 Roger Bacon Drive, Suite 201
Reston, VA 20190
(703) 318-6800 Telephone
(703) 318-6808 Facsimile
pcohen@cbcblaw.com
*Counsel for Defendant Torres Advanced Enterprise Solutions, LLC*

Richard J. Conway, Esq.,
DICKSTEIN SHAPIRO LLP
1825 Eye Street NW
Washington, D.C. 20006
Telephone: (202) 420-2200
Facsimile: (202) 420-2201
conwayr@dicksteinshapiro.com
*Counsel for Specially Appearing Defendant Jerry Torres*

                    */s/ Patricia E. Bruce*
                    Patricia E. Bruce