UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SABRE INTERNATIONAL SECURITY,  :
                               :
             Plaintiff,        :
                               :
      v.                       :        Civil Action No. 11-806 (GK)
                               :
TORRES ADVANCED ENTERPRISE     :
SOLUTIONS, LLC, et al.,        :
                               :
             Defendants.       :
                               :

## MEMORANDUM OPINION

Pending before the Court are twelve Motions in Limine filed by Plaintiff Sabre International Security ("Sabre") and six Motions in Limine filed by Defendant Torres Advanced Enterprise Solutions ("Torres").[1] Upon consideration of the Motions and Responses, and the entire record herein, and for the reasons stated below, the Court rules as follows.

### SABRE'S MOTIONS IN LIMINE

I.   **Sabre's Motion in Limine to Exclude Torres' Spreadsheet of Alleged Costs Incurred [Dkt. No. 390] ("Sabre's Motion in Limine No. 1")**

Sabre's Motion in Limine No. 1 seeks to exclude, as hearsay, four versions of a financial spreadsheet Torres used to track payments it made to Sabre and expenses it allegedly

---

[1] In accordance with the Pretrial Order entered on August 26, 2014 [Dkt. No. 382], the parties filed their Motions in Limine on September 9, 2014 [Dkt. Nos. 385-403] and their respective Oppositions on September 23, 2014 [Dkt. Nos. 411-428].

incurred on Sabre's behalf (the "Tracking Sheet").[2]   Torres

contends that the Tracking Sheet is admissible both as a

business record under Fed. R. Evid. 803(6) and as a summary of

voluminous writings under Fed. R. Evid. 1006.

## A.    Rule 803(6)

The "business record" rule creates an exception to the

hearsay rule for a "record of an act, event, condition, opinion

or diagnosis" if:

> (A) the record was made at or near the time by – or
> from information transmitted by – someone with
> knowledge;
>
> (B) the record was kept in the course of a regularly
> conducted activity of a business, organization,
> occupation, or calling, whether or not for profit;
>
> (C) making the record was a regular practice of that
> activity;
>
> (D) all these conditions are shown by the testimony of
> the custodian or another qualified witness, or by a
> certification that complies with Rule 902(11) or (12)
> or with a statute permitting certification; and
>
> (E) the opponent does not show that the source of
> information or the method or circumstances of
> preparation indicate a lack of trustworthiness.
>
> Fed. R. Evid. 803(6).

---

[2] The four versions of the Tracking Sheet at issue are dated
between October 20, 2010, and January 7, 2011, Pl.'s Mot. at 1,
and contain entries dated from January 1, 2010, to December 31,
2010.  See generally id. Exs. 1-4.

Sabre's primary argument against admission of the Tracking Sheet is its contention that Torres created the Tracking Sheet in anticipation of litigation and not as a "regularly conducted activity." Pl.'s Mot. at 2.[3]

Torres claims, however, that it created the Tracking Sheet before it was on notice of any legal action. Def.'s Opp'n at 1. It has submitted the Declaration of its former Chief Financial Officer ("CFO"), Kathryn Jones, who explains that she created the Tracking Sheet on or around August 27, 2010, as an "ongoing accounting of extraordinary expenses that were being incurred above normal business operating expenses." See Declaration of Kathryn Jones ("Jones Decl.") ¶ 4 Ex. 2 [Dkt. No. 427-1]. Jones states that "[i]t was the regular business practice of Torres [] to track [the] expenses [included in the Tracking

_____

[3] Sabre is correct that business records created for purposes of litigation do not satisfy Rule 803(6) because they are inconsistent with one of the central assumptions behind the exception: that "the employees who generate [business records] have a strong motive to be accurate and none to be deceitful." Certain Underwriters at Lloyd's, London v. Sinkovich, 232 F.3d 200, 205 (4th Cir. 2000). Therefore, records created in anticipation of litigation do not fall within the business records exception because they are not created "for the systematic conduct and operations of the enterprise but for the primary purpose of litigating." Id.; see also United States v. Feliz, 467 F.3d 227, 234 (2d Cir. 2006) ("We know that because Rule 803(6) requires business records to be kept in the regular course of a business activity, records created in anticipation of litigation do not fall within its definition.").

Sheet] in order to support variance analysis for the company's financial statements" and in situations where "performance issues with a subcontractor arose." Id. ¶ 4. Furthermore, she expressly denies that the Tracking Sheet was prepared "in anticipation of litigation or for a litigious purpose." Id. ¶ 5.

Based on this Declaration, and because this case was not filed until April 29, 2011, approximately nine months after Jones claims to have created the Tracking Sheet, Torres shall have the opportunity at trial to demonstrate that the Tracking Sheet was not created in anticipation of litigation and is admissible as a business record. Sabre's Motion to exclude the Tracking Sheets under Rule 803(6) shall therefore be **denied**.

### B. **Rule 1006**

Torres also argues that the Tracking Sheet is admissible under Rule 1006, which permits the use of a "summary, chart, or calculation" to prove the content of "voluminous writings . . . that cannot be conveniently examined in court." Fed. R. Evid. 1006. "For a summary of documents to be admissible, the documents must be so voluminous as to make comprehension by the jury difficult and inconvenient; the documents themselves must be admissible; the documents must be made reasonably available

-4-

for inspection and copying; the summary must be accurate and nonprejudicial; and the witness who prepared the summary should introduce it." United States v. Fahnbulleh, 752 F.3d 470, 479 (D.C. Cir. 2014) (citation omitted).

Torres contends that it "has underlying documentation for amounts reflected in the spreadsheet, including wire transfers, receipts and invoices." Def.'s Opp'n at 2; see also Decl. of Daniel Cotter ("Cotter Decl.") ¶ 3 [Dkt. No. 427-6]. Consequently, Torres shall have the opportunity at trial to demonstrate that the Tracking Sheet is admissible as a summary of voluminous records pursuant to Fed. R. Evid. 1006.[4]

For both of the foregoing reasons, Sabre's Motion in Limine No. 1 shall be **denied**. However, the Tracking Sheet shall not be admitted into evidence unless and until Torres has laid the proper foundation at trial by establishing, through the testimony of former CFO Jones, current CFO Cotter, or any other

---

[4] Sabre contends that the Tracking Sheet is inaccurate because it commingles TWISS I and TWISS II costs. Pl.'s Mot. at 4. The Tracking Sheet does not, however, purport to be limited to TWISS II expenses. Thus, the inclusion of TWISS I costs does not render it inaccurate; it merely reflects that the Tracking Sheet includes information that may not be relevant to Sabre's claims. Sabre also contends that other entries in the Tracking Sheet are inaccurate, but in support of this assertion, it misquotes CEO Jerry Torres' deposition testimony. Jerry Torres did not testify that the Tracking Sheet was erroneous; he testified that "I do not know [why certain charges were included]. You have to ask [CFO] Kathy [Jones]." Pl.'s Mot. Ex. 30 at 314:7-8.

qualified witness, and any necessary documentary evidence, that all of the requirements of Rule 803(6) and/or Rule 1006 have been met.

## II. Sabre's Motion in Limine to Exclude Torres from Introducing Evidence of TWISS II Equipment Purchases or Sabre's Performance Deficiencies [Dkt. No. 392] ("Sabre's Motion in Limine No. 2")

Sabre's Motion in Limine No. 2 seeks to exclude Torres from introducing any evidence that it breached its contractual obligation to provide adequate equipment for the Team's TWISS II Task Orders. Sabre argues that Torres is estopped from challenging the adequacy of such equipment because it invoiced the Government for the full amount due on each Task Order, thus representing that all aspects of the Team's performance – including Sabre's provision of equipment – was satisfactory. See Pl.'s Mot. at 2. Sabre also argues that Torres has not presented evidence of any expenses incurred as a result of any equipment deficiencies. Id. at 3.

It is well established that "motions in limine are a means for arguing why 'evidence should or should not, for evidentiary reasons, be introduced at trial'" and "are not another excuse to file dispositive motions disguised as motions in limine." Graves v. D.C., 850 F. Supp. 2d 6, 10-11 (D.D.C. 2011) (emphasis added) (citations omitted). In other words, a Motion in Limine

is not a "vehicle for a party to ask the Court to weigh the sufficiency of the evidence[,]" _id._ at 11, which is precisely what Sabre asks the Court to do as a basis for categorically excluding all evidence that it breached its contractual obligations to provide satisfactory equipment.[5]   Therefore, Sabre's Motion in Limine No. 2 shall be **denied**.

### III.   **Sabre's Motion in Limine to Exclude Torres from Introducing Evidence of Alleged Costs for Vehicles or Sabre's Performance Deficiencies in Providing TWISS II Vehicles [Dkt. No. 393] ("Sabre's Motion in Limine No. 3")**

Sabre's Motion in Limine No. 3 seeks to exclude all evidence relating to any "offset or defense to Sabre's Count 2 claims, including the defense that Sabre allegedly failed to perform all of Sabre's contract obligations to Torres relating to vehicles."   Pl.'s Mot. at 1.   As with Sabre's Motion in Limine No. 2, this Motion is directed at the merits of Torres' claim that Sabre failed to provide satisfactory vehicles, and the sufficiency of evidence to support that claim, rather than any specific admissibility issues.   Therefore, it is not the

---

[5]   Furthermore, contrary to Sabre's contention, Torres has presented evidence that it purchased equipment after concluding that Sabre's equipment was inadequate.   For example, Torres has presented documentary and testimonial evidence that Sabre failed to provide uniforms, boots, body armor, vehicles, and other equipment it was contractually required to provide under the Teaming Agreement, and that Torres purchased and provided such equipment after concluding that Sabre had not satisfactorily done so.   See Def.'s Opp'n Exs. 1-9 [Dkt. No. 413].

proper subject of a motion in limine.  See Graves, 850 F. Supp. 2d at 10-11.

Furthermore, as already noted in footnote 5 supra, contrary to Sabre's contention, Torres has presented evidence that Sabre failed to provide serviceable vehicles in accordance with its obligations under the Teaming Agreement and that, to make up for Sabre's failures, it was required to purchase and lease extra vehicles to satisfy the Government.  See, e.g., Def.'s Opp'n Ex. 1 (Rule 30(b)(6) deposition tr. of Rebekah Dyer) at 74:21-75:3 ("[W]e bought new vehicles to replace ones that Sabre tried to pass off as new to the government because they actually complained about the quality of the vehicles."); id. Ex. 4 (deposition tr. of Jerald Barnes) at 74:9-14 ("Even at the Victory Base Complex we had to lease vehicles.  Sabre gave us a broke-down truck that wouldn't have passed anybody's inspection[.]") [Dkt. No. 415].  Finally, Sabre admits that the record includes evidence of "vehicle deficiencies at some sites on some days."  Mot. at 4.

For these reasons, Sabre's Motion in Limine No. 3 shall be **denied.**

**IV.** **Sabre's Motion in Limine to Exclude Torres from Introducing Evidence of Alleged Uniform Purchases or Sabre's Performance Deficiencies in Providing TWISS II Uniforms [Dkt. No. 394] ("Sabre's Motion in Limine No. 4")**

Sabre's Motion in Limine No. 4 seeks to exclude any evidence or argument that Sabre's provision of uniforms for TWISS II Task Orders was deficient. Sabre contends that Torres has failed to present any evidence to support such a claim. Mot. at 1. As discussed above, a motion in limine is not the proper vehicle to address the sufficiency of the evidence in support of a claim. Moreover, contrary to Sabre's assertions, Torres has presented evidence that it purchased uniforms Sabre failed to provide. See supra note 5. Consequently, Sabre's Motion in Limine No. 4 shall be **denied.**

**V.** **Sabre's Motion in Limine to Exclude Torres from Introducing Evidence of Alleged Payments of Third Country National Guard Salaries [Dkt. No. 395] ("Sabre's Motion in Limine No. 5")**

Sabre's Motion in Limine No. 5 seeks to exclude Torres from introducing evidence that it paid for Third Country National ("TCN") guard services Sabre was contractually required to provide. To the extent Sabre seeks to categorically exclude such evidence, the Motion shall be **denied** for the same reasons as Motion Nos. 2-4: first, that a Motion in Limine is not a proper vehicle to argue the merits of a claim, and second, that

Torres has produced evidence that, as a result of TCN guard shortages and other performance issues, it paid for TCN guard services even though that responsibility was contractually allocated to Sabre.   See Def.'s Opp'n at Exs. 1-8 [Dkt. No. 416].

Sabre also makes a more specific argument that the Tracking Sheet in particular must be excluded as evidence of Torres' TCN guard costs because it includes guard costs for Task Orders not at issue in this case, specifically TWISS I Task Orders and the FOB Cruz Morris Task Order, which was a TWISS II Task Order in which Sabre was not involved. Pl.'s Mot. at 1-4. Sabre argues that such costs are irrelevant and their inclusion in the Tracking Sheet renders it "erroneous," "inaccurate," and likely to be unnecessarily confusing to the jury.   Pl.'s Mot. at 1-3.

Torres argues, by contrast, that inclusion of TCN guard costs incurred at FOB Cruz Morris is appropriate because it "is entitled to seek these costs given Sabre's anticipatory breach and repudiation of its obligations under the Teaming Agreement, causing Torres [] to take over TWISS II operations and bid for and stand-up [i.e., equip the Task Order site at] Cruz Morris without Sabre's involvement."   Def.'s Opp'n at 4.

-10-

As both sides agree, damages in connection with TWISS I Task Orders are not at issue in this case. See Def.'s Mot. in Limine No. 1 at 1-2 [Dkt. No. 385]. Therefore, any expenses Torres paid for TWISS I TCN guard services are not relevant and shall not be admitted at trial. See Fed. R. Evid. 402. However, because Torres has asserted a defense that Sabre anticipatorily breached the Teaming Agreement by failing to provide adequate TCN guard force services for TWISS II Task Orders – including at FOB Cruz Morris – its TCN guard costs resulting from the alleged anticipatory breach at Cruz Morris are relevant. Moreover, the entries for TCN guard costs at TWISS II sites at which Sabre did participate are also relevant.

Because some of the entries in the Tracking Sheet are relevant, exclusion of the entire document is only appropriate if its probative value is "substantially outweighed" by a danger of unfair prejudice, jury confusion, undue delay, or the needless presentation of cumulative evidence" resulting from the inclusion of irrelevant entries. See Fed. R. Evid. 403. This standard is not met.

First, Sabre has not explained why redaction of the entries related to the TWISS I costs is not sufficient, rather than exclusion of the entire document. Second, Sabre has only

identified a handful of line items in the Tracking Sheet pertaining to TWISS I TCN costs. See Pl.'s Mot. at 2. Even without redaction, these entries are not so numerous as to be confusing to the jury. Third, Sabre may, through cross-examination and the use of demonstrative evidence - highlight the specific expenses that are not at issue, thereby further reducing the chance of any jury confusion. Fourth, Sabre may seek a jury instruction instructing the jury that it may not consider TWISS I costs as evidence.

In sum, the Tracking Sheet shall not be excluded in its entirety as evidence of Torres' TCN guard costs; however, the entries related to Torres' TWISS I TCN guard costs shall be redacted and excluded.

For the foregoing reasons, Sabre's Motion in Limine No. 5 shall be **granted in part** and **denied in part**.

VI. **Sabre's Motion in Limine to Exclude Torres from Introducing Evidence of Medical Costs [Dkt. No. 396] ("Sabre's Motion in Limine No. 6")**

Sabre's Motion in Limine No. 6 seeks to exclude Torres from introducing any evidence that it paid for medical services Sabre was contractually obligated to provide. Sabre contends that Torres has not presented evidence to support such a claim. Pl.'s Mot. at 1.

-12-

As with Motion Nos. 2-5, a motion in limine is not a proper vehicle to address the sufficiency of evidence underlying a claim. Furthermore, contrary to Sabre's assertions, Torres has produced evidence of medical expenses it incurred as a result of Sabre's allegedly deficient performance on certain TWISS II Task Orders. See Def.'s Opp'n at Exs. 1-4 [Dkt. No. 418]. Therefore, Sabre's Motion in Limine No. 6 shall be **denied.**

**VII. Sabre's Motion in Limine to Exclude Torres from Introducing Evidence of Alleged Damages Relating to the FOB Adder, Cruz Morris, Doura, Cobra, Bucca, and Ramadi Task Order Competitions [Dkt. No. 397] ("Sabre's Motion in Limine No. 7")**

Sabre's Motion in Limine No. 7 seeks to exclude Torres from introducing "evidence of any alleged 'breach of contract' or 'lost profits' relating to its Forward Operating Base ("FOB") Adder Task Order Counterclaim, or alleged breaches relating to FOB Cruz Morris, Doura, Cobra, and Ramadi Task Orders." Pl.'s Mot. at 1.

Sabre's Motion is again directed to the merits of Torres' claims and the sufficiency of the evidence to prove them, rather than the admissibility of any specific evidence. See, e.g., Pl.'s Mot. at 3 ("Torres has no reasonable basis for claiming any Sabre 'breach' or loss relating to the FOB Cruz Morris

competition."); id. ("Torres also has not produced or identified any documentary evidence in support of these breach claims.").

As explained repeatedly above, a motion in limine is not the appropriate vehicle to seek dispositive relief based on the sufficiency of evidence. Moreover, although these Task Orders are not at issue in Sabre's claim for breach of contract in Count 2, they are relevant to Torres' counterclaim for breach of contract.

Consequently, Sabre's Motion in Limine No. 7 shall be **denied**.

**VIII. Sabre's Motion in Limine to Exclude Torres from Introducing Evidence of Alleged Termination of the Parties' Teaming Agreement [Dkt. No. 398] ("Sabre's Motion in Limine No. 8")**

Sabre's Motion in Limine No. 8 seeks to exclude "any evidence or argument at trial of an alleged termination of the parties' Teaming Agreement[.]" Pl.'s Mot. at 1. To the extent this Motion seeks to categorically exclude any and all evidence supporting Torres' claim that the Teaming Agreement was terminated, that request shall be **denied** for the reasons stated throughout this Memorandum Order: a Motion in Limine is not the proper vehicle to seek disposal of a substantive claim or defense.

-14-

Sabre also seeks to exclude a specific letter terminating the Teaming Agreement, which Torres claims to have sent to Sabre on or around September 30, 2010 (the "Termination Letter"). Sabre claims that the Termination Letter is inadmissible because Torres has not presented any evidence that it was ever sent. See Pl.'s Mot. at 1-3. Contrary to this assertion, there is evidence that the Termination Letter was sent: Torres' former Vice President Rebekah Dyer testified that she sent the letter via Federal Express. Pl.'s Mot. at 2 & Ex. 5 (Dyer R. 30(b)(6) deposition tr. at 194:5-7).[6] Moreover, even if the Termination Letter was not sent, Sabre has not identified any evidentiary principal requiring its exclusion on that basis alone.

Sabre also contends that the Termination Letter must be excluded because it is hearsay. The hearsay rule applies to statements that "a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c)(2). It does not apply to evidence that is not offered for its truth but for another purpose, such as to prove a party's state of mind. See Whitbeck v. Vital Signs, Inc., 159 F.3d 1369, 1374 (D.C. Cir. 1998) (holding that "[w]e have no

---

[6] Sabre argues that Dyer's testimony lacks "credibility" due to the absence of any Federal Express records establishing that the letter was mailed. Dyer's credibility is an issue for the jury.

doubt that the magistrate judge erred in excluding" out of court statement that "would have explained [plaintiff's] state of mind [and] was relevant for this non-hearsay purpose").

In addition, it is well-established that the hearsay rule does not apply to "verbal acts" or out-of-court statements that have "independent legal significance." See United States v. Stover, 329 F.3d 859, 870 (D.C. Cir. 2003) (noting that "verbal acts" and "statements that have independent legal significance" are not hearsay) (citation omitted); see also Echo Acceptance Corp. v. Household Retail Servs., Inc., 267 F.3d 1068, 1087 (10th Cir. 2001) (holding that hearsay rule is inapplicable "where the out-of-court statement actually 'affects the legal rights of the parties, or where legal consequences flow from the fact that the words were said'") (citation omitted).

To the extent the Termination Letter is offered for a non-hearsay purpose, it need not be excluded under Rule 802. For example, Torres may attempt to demonstrate that the Termination Letter terminated the parties' contractual relationship, thereby having independent legal significance. See Remington Investments, Inc. v. Berg Prod. Design, Inc., 172 F.3d 876 (9th Cir. 1999) (holding that hearsay rule was "not implicated" by "contractual documents"). Moreover, Torres has asserted a

defense of accord and satisfaction, which requires it to establish the existence of a bona fide dispute as to amounts due under the Teaming Agreement. The fact that Torres wrote a letter purporting to terminate the Teaming Agreement is evidence that it believed there was a dispute, separate and apart from whether any of the specific factual assertions made in the Termination Letter are true. Therefore, Sabre's Motion in Limine No. 8 to exclude the Termination Letter shall be **denied** to the extent Torres seeks to admit the Termination Letter for any non-hearsay purposes.[7]

Torres also argues that the Termination Letter is admissible for hearsay purposes, i.e., as evidence of the truth of the statements made therein. It advances two arguments: first, that the Termination Letter is admissible as a "business record" under Rule 803(6), and second, that it is admissible as a prior consistent statement under Rule 801(d)(1)(B).

As discussed, to satisfy the business record exception, Torres must establish that the Termination Letter "was kept in the course of a regularly conducted activity" and that "making [such a] record was a regular practice[.]" Fed. R. Evid. 803(6)(B)-(C). Furthermore, to be admissible, the record must

---

[7] The Court emphasizes, however, that all evidence is subject to the authenticity requirements of Rule 901(a).

be "typical of entries made systematically or as a matter of routine to record events or occurrences, to reflect transactions with others, or to provide internal controls." Palmer v. Hoffman, 318 U.S. 109, 113 (1943).

Torres has presented the Declaration of its current Chief Financial Officer, Daniel P. Cotter, who states that "[i]t is a regular business practice of Torres [] to conclude business relationships with others when appropriate." See Def.'s Opp'n Ex. 3 (Decl. of Daniel P. Cotter) ¶ 4. This testimony merely shows that Torres sometimes terminates its business relationships; it does not establish that it "routinely" or "systematically" does so through letters of termination or that the Termination Letter at issue is "typical" of letters routinely used in other circumstances. Palmer, 318 U.S. at 113. Consequently, Torres has not demonstrated that Rule 803(6)(B) and (C) are satisfied.

Second, Torres argues that the Termination Letter is admissible as a prior consistent statement. Rule 801(d)(1)(B) permits the introduction of such statements if the "declarant testifies and is subject to cross-examination about [the] prior statement, and the statement" is "offered to rebut an express or implied charge that the declarant recently fabricated it or

acted from a recent improper influence or motive in so testifying[.]" Fed. R. Evid. 801(d)(1)(B).

Torres is correct that Sabre has accused "Ms. Dyer of 'recently fabricating' that a Termination Letter was sent." Def.'s Opp'n at 1-2. However, the "declarant" of the Termination Letter is Torres CEO Jerry Torres, not Ms. Dyer, as it is his signature that appears at the bottom. See Pl.'s Mot. Ex. 2 at 5. Rule 801(d)(1)(B) does not authorize the use of a prior consistent statement of one witness to rebut a charge that a different witness is fabricating her testimony. See Fed. R. Evid. 801(d)(1)(B) (requiring prior consistent statement to have been made by the same "declarant" accused of fabricating her testimony).

Moreover, the only part of the Termination Letter that is "consistent" with Dyer's testimony is a line at the top of one of the earlier versions of the Termination Letter stating that it was sent "VIA FEDERAL EXPRESS AND E-MAIL." This line was deleted in the version of the Termination Letter attached to Torres' Opposition, which is the version Dyer claims to have sent. Thus, the Termination Letter on which Torres relies does not include any reference to the method of transmission and is not, therefore, consistent with Dyer's testimony that she sent

-19-

the Termination Letter by Federal Express. <u>See</u> Torres' Opp'n Ex. 1 [Dkt. No. 426-1].

Finally, even if Torres sought to introduce the earlier version of the Termination Letter stating that it has been sent "VIA FEDERAL EXPRESS AND E-MAIL," Dyer testified that she only sent the Termination Letter by Federal Express, not email. <u>See</u> Pl.'s Mot. Ex. 5 (Dyer R. 30(b)(6) deposition tr. at 194:2-4). Therefore, the earlier version of the Termination Letter is not, in fact, entirely consistent with Dyer's testimony. For all of these reasons, the Termination Letter is not admissible under Rule 801(d)(1)(B).

Sabre's Motion in Limine No. 8 shall be **granted** insofar as it seeks to exclude the Termination Letter for the truth of the statements made therein and otherwise shall be **denied.**

**IX.   Sabre's Motion in Limine to Exclude Torres from Introducing Evidence or Argument of any Alleged Impropriety of Sabre's Proposed Pricing for TWISS II Task Orders [Dkt. No. 399] ("Sabre's Motion in Limine No. 9")**

Sabre's Motion in Limine No. 9 seeks to exclude any "evidence or argument at trial of any alleged impropriety relating to Sabre's pricing proposals for TWISS II Task Orders" on the basis that "[s]uch claims are unsubstantiated and irrelevant" and should be excluded under Rule 403.

-20-

Contrary to Sabre's contention, Torres has presented both documentary and testimonial evidence that Sabre's pricing proposals were uncompetitive. Such evidence includes deposition testimony and emails complaining that Sabre's prices were too high. See Pl.'s Mot. at 1 & Exs. 2-3; Def.'s Opp'n at 2.

This evidence is highly relevant to several issues at the heart of this case. First, it is relevant to explain why Torres objected to Sabre's prices and ultimately reduced such prices in the Team's proposals to the Government. Second, it is relevant to Torres' claim that Sabre breached its contractual obligation to provide Torres with "most favored customer" pricing under Section 5.2(A)(3) of the Teaming Agreement. Third, it is relevant to whether a bona fide dispute existed between the parties for purposes of Torres' defense of accord and satisfaction. In sum, evidence that Torres believed Sabre's pricing proposals were too high or not competitive is highly relevant and not unfairly prejudicial, and therefore shall not be excluded under Rules 402 or 403.

Sabre also contends, however, that Torres will seek to introduce testimony that Government officials complained about Sabre's pricing as "fraudulent" and "unethical." It is not clear from Torres' Opposition whether it will, in fact, seek to

introduce such testimony or, if so, what the basis of such testimony will be. Consequently, if Torres seeks to introduce such testimony, it shall be required to lay a foundation for the admissibility of such evidence and overcome any hearsay objections. Moreover, because such testimony, even if otherwise admissible, may be unfairly prejudicial (or, alternatively, may be highly probative), Sabre may renew its Rule 403 objection at that time.

For the foregoing reasons, Sabre's Motion in Limine No. 9 shall be **denied without prejudice** as to any testimony about Government officials' view of Sabre's prices as "fraudulent" or "unethical" and shall otherwise be **denied.**

**X.**   **Sabre's Motion in Limine to Exclude Torres from Introducing Evidence, Representations of Counsel or Argument of Investigations or Alleged Criminal Misconduct of Sabre or Members of the Sabre Executive Group [Dkt. No. 400] ("Sabre's Motion in Limine No. 10")**

Sabre's Motion in Limine No. 10 seeks to exclude evidence relating to: (1) an audit by the Defense Contract Audit Agency ("DCAA") of another Government contract involving Sabre that is unrelated to this case (the "IRD Audit"); (2) a DCAA audit of Sabre's invoices for the TWISS program, which is referred to in an August 30, 2010, letter from Torres CEO Jerry Torres to Sabre CEO Frank McDonald (the "DCAA TWISS Audit"); and (3) any

-22-

evidence that either Sabre or members of its executive management team were investigated for civil or criminal misconduct. Sabre seeks to exclude this evidence as hearsay, lacking in foundation, and unfairly prejudicial under Rule 403.

The Court has already ruled that the IRD Audit is not relevant, and Torres has stated that it "will of course abide by [that] ruling." Def.'s Opp'n at 1 [Dkt. No. 419]. Therefore, Sabre's Motion is **granted** insofar as it seeks exclusion of the IRD Audit.

As to the DCAA TWISS Audit, Torres admits that no such audit was conducted. Def.'s Opp'n at 1 & Ex. 1. Therefore, Sabre's Motion shall be **denied as moot.**

Torres has, however, presented evidence of audits by the Defense Contract Management Agency ("DCMA") regarding the Team's performance of TWISS Task Orders, which led to the issuance of several "Letters of Concern" and "Corrective Action Requests." See Def.'s Opp'n Exs. 2-5. These audits and the related actions by the Government are directly relevant to whether Sabre adequately performed its TWISS obligations. Furthermore, they are potentially admissible under Rule 803(8)(A)(iii), which permits the introduction of public records if they set out "matter[s] observed while under a legal duty to report" and

"factual findings from a legally authorized investigation" and "neither the source of information nor other circumstances indicate a lack of trustworthiness." Fed. R. Evid. 803(8)(A)(ii)-(iii), (B). Therefore, to the extent Sabre seeks to exclude evidence of the DCMA TWISS audits, that request is **denied without prejudice.**

Finally, neither party has presented any evidence of civil or criminal misconduct. Consequently, to the extent Sabre seeks to exclude evidence of criminal or civil misconduct, that request is also **denied without prejudice.**

For the foregoing reasons, Sabre's Motion in Limine No. 10 shall be **granted in part** and **denied in part.**

**XI. Sabre's Motion in Limine to Exclude Torres' Proposed Trial Exhibit No. 412 (Declaration of Baryamujuru ("Moses") Matsiko) [Dkt. No. 401] ("Sabre's Motion in Limine No. 11")**

Sabre's Motion in Limine No. 11 seeks to exclude a Declaration allegedly executed by Baryamujuru ("Moses") Matsiko on January 27, 2014 (the "Torres Matsiko Declaration"), and an accompanying letter of the same date (the "Watertight Letter"), stating that "[a]ll monies relating to TWISS I and TWISS II have been paid in full to Watertight Services." Watertight Services, an affiliate of Pinnacle Security/Pinnacle Group, is a guard

force company located in Uganda, which supplied TCN guards for the TWISS program.  Matsiko is its Chief Executive Officer.

Although Sabre has not directly challenged the authenticity of the Torres Matsiko Declaration as a basis for exclusion, it has submitted a different Declaration, also purportedly signed by Moses Matsiko, which states that the Watertight Letter and the Torres Matsiko Declaration are "false" and a "forgery" and that "both Torres [] and Sabre owes [sic] us money and its extremely shocking and bizarre that I would say, write, swear or even think otherwise."  Pl.'s Mot. Ex. 2 (Decl. of Baryamujuru Matsiko, dated Mar. 17, 2014) ¶¶ 4-6.[8]

Sabre contends that the Torres Matsiko Declaration and the Watertight Letter must be excluded as hearsay.  Torres has made clear, however, that it does not seek to admit the Torres Matsiko Declaration as evidence.  Rather, the sole purpose of the Declaration is to lay a foundation for admitting the Watertight Letter under Rule 803(6).  Def.'s Opp'n at 1.

---

[8] To distinguish Sabre's Declaration from the one submitted by Torres, the Court shall refer to it as the "Sabre Matsiko Declaration."

Consequently, the Court need not consider whether the Declaration is independently admissible.[9]

As to the Watertight Letter, Torres seeks to admit that Letter under the business records exception. As discussed, a business record is only admissible if, among other things, "neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness." Fed. R. Evid. 803(6)(E).

Sabre has shown that the circumstances surrounding the preparation of the Watertight Letter indicate a lack of trustworthiness. In particular, it has produced the Sabre Matsiko Declaration, which states that the Watertight Letter proffered by Torres "is not authentic" and that the signature on the letter appears to be forged. See Pl.'s Mot. Ex. 2 (Sabre Matsiko Decl.) ¶¶ A(4) & B(4) [Dkt. No. 401-2]. Moreover, although Torres contends that the Watertight Letter was sent in response to a January 8, 2014, letter of its current CFO, Daniel Cotter, Torres has not presented any sworn declaration of its own officers to that effect. See Def.'s Opp'n Exs. 1-4. In fact, Torres has not proffered any sworn testimony of its own

---

[9] Preliminary questions regarding the admissibility of evidence are not governed by evidentiary rules, except those of privilege. See Fed. R. Evid. 104(a).

witnesses regarding the authenticity of the Watertight Letter. Thus, the Court concludes that the Watertight Letter is not trustworthy, and, therefore, is inadmissible under Rule 803(6).[10]

Sabre's Motion in Limine No. 11 shall therefore be **granted**.

**XII. Sabre's Motion in Limine to Exclude Torres from Calling Daniel P. Cotter as a Witness [Dkt. No. 402] ("Sabre's Motion in Limine No. 12")**

Sabre's Motion in Limine No. 12 seeks to prevent Torres from calling CFO Cotter as a witness at trial. Sabre contends that CFO Cotter was not employed by Torres until after the events at issue in the case and, therefore, that he is incompetent to testify as a lay witness because he "has no personal knowledge of the matters at issue." Pl.'s Mot. at 1.

Torres does not deny that CFO Cotter lacks personal knowledge. It claims, however, that his testimony is admissible because he was Torres' corporate designee for purposes of Fed. R. Civ. P. 30(b)(6). Rule 30(b)(6) pertains to corporate depositions for purposes of discovery. See, e.g., McKesson Corp. v. Islamic Republic of Iran, 185 F.R.D. 70, 79 (D.D.C. 1999) ("Rule 30(b)(6) is intended to streamline the discovery

---

[10] Having so concluded, the Court need not decide whether the other elements of the business-record exception are satisfied.

process."). It does not govern the admissibility of testimonial evidence at trial.[11]

Moreover, Rule 602 of the Federal Rules of Evidence, which does govern the admissibility of testimonial evidence at trial, clearly states that "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602; see also L-3 Commc'ns Corp. v. OSI Sys., Inc., No. 02-9144, 2006 WL 988143, at *2 (S.D.N.Y. Apr. 13, 2006) (holding that, at a jury trial, a non-adverse party "may only offer testimony from [its own Rule 30(b)(6) witness] as a fact witness based on his personal knowledge and in compliance with [the] Federal Rule[s] of Evidence [ ]"). Consequently, Torres may not offer the live testimony of CFO Cotter on any matter for which he lacks personal knowledge.

As to the use of Cotter's recorded deposition testimony at trial, that issue is governed by Rule 32 of the Federal Rules of Civil Procedure, which states that deposition testimony is

---

[11] Torres cites a number of cases recognizing that, at a deposition conducted pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, the corporate designee need not have personal knowledge of the matters on which he or she testifies. However, each of these cases involved testimony given at a deposition; none pertained to the introduction of live testimony at a jury trial.

admissible at trial only "to the extent it would be admissible under the Federal Rules of Evidence if the deponent were present and testifying[.]" Fed. R. Civ. P. 32(a)(1)(B). As discussed, CFO Cotter's testimony is inadmissible under Fed. R. Evid. 602 because he lacks personal knowledge. Therefore, his deposition testimony is also inadmissible and Sabre's Motion in Limine No. 12 shall be **granted.**

## XIII. Conclusion as to Sabre's Motions in Limine

For all of the foregoing reasons, Sabre's Motions in Limine Nos. 1-12 shall be **granted in part** and **denied in part** as set forth above. An Omnibus Order shall accompany this Memorandum Opinion.

## TORRES' MOTIONS IN LIMINE

**I. Torres' Motion in Limine to Exclude Evidence of Portions of the First Amended Complaint that Have Been Rendered Irrelevant by the Court's Summary Judgment Rulings [Dkt. No. 385] ("Torres' Motion in Limine No. 1")**

Torres' Motion in Limine No. 1 seeks to exclude evidence pertaining to claims that are no longer pending, having been dismissed either pursuant to Fed. R. Civ. P. 12(b)(6) or on summary judgment. In particular, Torres seeks to exclude evidence relating to ¶¶ 47-56, 99-102, 117-128, 137, 143-145, and Counts 3 and 4 of the First Amended Complaint ("FAC") [Dkt. No. 242].

**A.    Paragraphs 47-56 and 143-145 of the FAC**

Paragraphs 47-56 and 143-145 of the FAC allege that Torres failed to pay Sabre for work performed under the TWISS I MATOC. See FAC ¶¶ 47-56, 143-145.   Torres does not take the "blanket position" that all TWISS I matters are necessarily irrelevant, but it argues that "the specific allegations of damages and alleged wrongdoing by Torres in connection with the TWISS I task orders" are not relevant and would create a danger of unfair prejudice and jury confusion.   The Court agrees.

First, Sabre acknowledges that its TWISS I claims were dismissed by the Court on October 27, 2011 [Dkt. No. 39] and, as a result, it "is not claiming TWISS I damages."   Pl.'s Opp'n at 1 [Dkt. No. 411].   Consequently, whether Torres breached any of the parties' several contracts relating to the TWISS I MATOC is not relevant.   In fact, Sabre expressly concedes that "the allegations in FAC ¶¶ 143-145 are irrelevant."   Id. at 1 n.2.

Second, even if Torres' alleged breaches relating to any TWISS I Task Orders were marginally relevant, the minimal probative value of that evidence is substantially outweighed by the significant risk of juror confusion and undue delay that would result from its introduction.   Even without any TWISS I evidence, this case will require the jury to pay close attention

to - and distinguish among - a substantial number of technically complex contracts, Task Orders, Proposals, Requests for Proposals, pricing sheets, invoices, and other paperwork. In so doing, the jury will be required to navigate substantial industry-specific terminology and familiarize itself with more than five pages of acronyms. See Joint List of Acronyms and Contracts, dated Sept. 22, 2014 [Dkt. No. 410-1]. There is no reason whatsoever to overwhelm the jury and confuse the issues by introducing evidence relating to TWISS I Task Orders that are not at issue in the case.

Consequently, Torres' Motion shall be **granted** to the extent it seeks exclusion of evidence pertaining to specific TWISS I Task Orders or any claim of breach related thereto, as alleged in paragraphs 47-56 and 143-145 of the FAC.[12]

---

[12] The parties may, however, briefly address their relationship under the TWISS I MATOC in order to provide a factual background for the events related to the TWISS II MATOC. Moreover, matters that are otherwise relevant to the parties' claims under TWISS II MATOC, are not rendered inadmissible simply because they touch on or are intertwined with issues relating to the TWISS I MATOC. However, to the extent either party seeks to introduce evidence touching on the TWISS I MATOC, they should inform the Court beforehand in order to discuss protocols for minimizing jury confusion.

## B.    Paragraphs 99-102 of the FAC[13]

Paragraphs 99-102 of the FAC pertain to Sabre's now-dismissed claims that Torres unjustly enriched itself by bidding on and performing Task Orders at FOB Cruz Morris and COS Garry Owen without Sabre's involvement.[14]   See FAC ¶¶ 99-100.   Torres seeks to exclude any evidence supporting these allegations because "the task orders that Torres allegedly obtained on its own" – namely, those at FOB Cruz Morris and COS Garry Owen – "are not included among the seven TWISS II task orders that will be the subject of the trial[.]"

Elsewhere, however, Torres has asserted that its TCN guard costs at Cruz Morris are recoverable because Sabre anticipatorily breached the Teaming Agreement, thereby requiring

---

[13] The parties also mention paragraphs 103-109.  However, Torres does not seek specific relief relating to these paragraphs.  See Def.'s Mot. at 3 & n.2.

[14] The Task Orders at FOB Cruz Morris and COS Garry Owen were TWISS II Task Orders that Torres allegedly bid for, obtained, and performed on its own, without ever seeking Sabre's input or involvement. Although these Task Orders fell within the scope of the exclusivity provisions of the Teaming Agreement, Sabre did not include them in its breach of contract claim in Count 2 and instead sought to recover under a theory of unjust enrichment. The Court recently granted summary judgment to Torres on Sabre's unjust enrichment claims because, as our Court of Appeals has consistently recognized, "there can be no claim for unjust enrichment when an express contract exists between the parties." Mem. Op., dated Aug. 20, 2014, at 54 [Dkt. No. 373] (quoting Albrecht v. Comm. on Employee Benefits of Fed. Reserve Employee Benefits, Sys., 357 F.3d 62, 69 (D.C. Cir. 2004)).

it to "stand up Cruz Morris without Sabre's involvement." <u>See</u>
Def.'s Opp'n to Pl.'s Mot. in Limine No. 5, at 4 [Dkt. No. 416].
Consequently, facts relating to the Task Order at FOB Cruz
Morris are relevant to Torres' defense.

Relatedly, Torres' undisputed decision to submit
unilateral bids for the Task Orders at FOB Cruz Morris and COS
Garry Owen reflects its response to the parties' ongoing
disagreement over pricing, which extended to the Task Orders at
issue in Count 2. Torres' alleged failure to convene a
Management Committee meeting (and otherwise coordinate with
Sabre regarding TWISS II Task Order Proposals) also reflects the
degree to which it attempted to resolve these pricing disputes,
which is a central point of contention in this case. Therefore,
Torres Motion to exclude evidence pertaining to paragraphs 99-
102 shall be **denied.**

### C. Paragraphs 117-128 and 222(b)-(c) of the FAC

Paragraphs 117-128 also refer to Torres' unilateral
submission of Task Order Proposals for FOB Cruz Morris and COS
Garry Owen. As discussed above, these issues are generally
relevant to the parties' ongoing disagreement on prices.

However, paragraphs 222(b) and (c) assert that Sabre is
entitled to "full payment of the revenue received by Torres" in

connection with the Cruz Morris and Garry Owen Task Orders. Sabre has not brought a claim for breach of contract related to these Task Orders, and its previously-asserted claims for unjust enrichment relating to such Task Orders have been dismissed. Accordingly, Sabre may not introduce evidence related to the amount of revenue Torres received for work performed at Cruz Morris and Garry Owen, nor may it argue that it is entitled to such revenue.

Therefore, Torres' Motion shall be **granted** insofar as it seeks to exclude evidence of the amount of revenue Torres earned from work at FOB Cruz Morris and Garry Owen and shall otherwise be **denied.**

### D. Paragraph 137 of the FAC

Paragraph 137 of the FAC alleges that "Torres concealed from Sabre the fact that Torres had applied for and was in the process of receiving" its own PSC license. FAC ¶ 137. This allegation is not relevant to any currently pending claim, nor does Sabre contend otherwise. Consequently, Torres' Motion shall be **granted** insofar as it seeks to exclude evidence pertaining to paragraph 137.

**E.    Counts 3 and 4 of the FAC**

In Counts 3 and 4 of the FAC, Sabre originally alleged that Torres breached the Teaming Agreement by failing to convene a Management Committee meeting to address actions taken by the United States Government in connection with Task Orders at JSS Shield and COS Warrior.  On August 20, 2014, the Court granted summary judgment in Torres' favor on these Counts, and consequently, they are no longer pending in the case.  See Mem. Op., dated Aug. 20, 2014, at 42-47 [Dkt. No. 373].

Sabre argues that these allegations are relevant to its claims in Count 2 alleging breach of contract.  See Pl.'s Opp'n at 4.  However, that theory in Count 2 is completely distinct – both factually and legally – from the breach of contract theories presented (and now dismissed) in Counts 3 and 4.  See Mem. Op., dated Aug. 20, 2014, at 42-47 [Dkt. No. 373].  Thus, even if the factual allegations underlying Counts 3 and 4 have any marginal relevance to any pending claim or defense, that relevance is substantially outweighed by the danger of "confusing the issues, misleading the jury, . . . [and] wasting time."  Fed. R. Evid. 403.  Therefore, Torres' Motion shall be

**granted** insofar as it seeks to exclude evidence pertaining to Counts 3 and 4.[15]

For all of the foregoing reasons, Torres' Motion in Limine No. 1 shall be **granted** insofar as it seeks to exclude evidence pertaining to paragraphs 47-56, 137, 143-145, and Counts 3 and 4 of the FAC, and **denied** insofar as it seeks to exclude evidence pertaining to paragraphs 99-102 and 117-128 of the FAC.

**II.    Torres' Motion in Limine to Exclude Evidence Pertaining to Former Counts 15-17 and 19-21 of the FAC Which Were Dismissed from the Case [Dkt. No. 386] ("Torres' Motion in Limine No. 2")**

Torres' Motion in Limine No. 2 seeks to exclude evidence pertaining to Counts 15-17 and 19-21 of the FAC, which originally asserted claims of fraud arising out of the parties' contractual relationship. On January 30, 2014, the Court dismissed these claims under Fed. R. Civ. P. 12(b)(6) pursuant to <u>Choharis v. State Farm Fire & Cas. Co.</u>, 961 A.2d 1080 (D.C. 2008), which mandates dismissal of fraud claims that are entirely intertwined with and duplicative of claims for breach of contract. <u>See</u> Mem. Op. of Jan. 30, 2014 ("Jan. 30 Mem. Op."), at 8-9 [Dkt. No. 288]. Torres seeks to exclude all

---

[15] Sabre also argues that the evidence related to Counts 3 and 4 is potentially admissible as impeachment evidence. The Court's Order on Torres' Motion in Limine No. 1 does not extend to any evidence that is properly used for impeachment purposes under the Federal Rules of Evidence.

evidence pertaining to these dismissed Counts on the basis that they are now irrelevant. See Def.'s Mot. at 2-4.

Sabre has, however, identified several evidentiary topics related to these dismissed Counts which are also relevant to its breach of contract claim in Count 2. These include Torres' alleged repeated promises to pay Sabre's invoices and its denial of the fact that it had reduced Sabre's prices in the Team's TWISS II proposals to the Government. Although this evidence cannot be used to prove a claim of fraud, it can be used to prove that Torres did agree to Sabre's proposed prices and to demonstrate the absence of a bona fide dispute for purposes of Torres' defense of accord and satisfaction.

Moreover, while Torres vaguely argues that such evidence is substantially more prejudicial than probative, and thus should be excluded under Fed. R. Evid. 403, it fails to identify which specific evidence it seeks to exclude under Rule 403 or explain how such evidence is unfairly prejudicial. Torres' Motion in Limine No. 2 shall therefore be **denied** to the extent it seeks to exclude all evidence underlying Counts 15-17 and 19-21.

However, the terms "fraud" and "fraudulent" are legal terms describing claims that have been dismissed. The use of

-37-

these terms at trial would be both inflammatory and confusing to the jury. Therefore, Torres' Motion shall be **granted** to the extent it seeks to preclude Sabre from using the terms "fraud" or "fraudulent" to describe its conduct in front of the jury.

Torres' Motion in Limine No. 2 shall be **granted in part** and **denied in part**, consistent with the foregoing.

### III. Torres' Motion in Limine to Preclude Karl Thorne From Testifying at Trial [Dkt. No. 387] ("Torres' Motion in Limine No. 3")

Torres' Motion in Limine No. 3 seeks to exclude the testimony of Karl Thorne, CPA. Torres argues that Thorne should be precluded from testifying because (1) Sabre failed to disclose him as a witness prior to the parties' submission of their Joint Pretrial Statement on August 12, 2014 [Dkt. No. 372], and (2) because Torres expects him to offer expert testimony in violation of Rules 701 and 702 of the Federal Rules of Evidence and Rule 26(a)(2) of the Federal Rules of Civil Procedure.

Sabre concedes that, even though Torres propounded an interrogatory requesting identification of all witnesses to be called at trial, it failed to disclose Thorne as a witness until August 11, 2014 – well after the close of discovery. Under the Federal Rules of Civil Procedure and this Court's Local Rules, a

party who fails to provide information requested during discovery "is not allowed to use that information or witness … at a trial, unless the failure was substantially justified or harmless." Fed. R. Civ. P. 37(c)(1); see also LCvR 26.2. Sabre has not even attempted to demonstrate that its failure to disclose Thorne during discovery was justified as it has given no explanation for why it failed to identify him as a potential witness until August 11, 2014, the day before the parties submitted their Joint Pretrial Statement.[16]  Nor was Sabre's failure harmless, as Torres was thus deprived of an opportunity to depose Thorne.

Consequently, Torres' Motion in Limine No. 3 shall be **granted**.

---

[16] Sabre contends that it objected to Torres' Interrogatory as premature.  But even if Torres' interrogatory was premature on January 9, 2012, when it was propounded, Sabre was required to supplement its response in a timely manner as it identified witnesses for trial.  See Fed. R. Civ. P. 26(e) ("A party who has . . . responded to an interrogatory . . . must supplement or correct its disclosure or response[] in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect[.]"  Moreover, in its response to Torres' interrogatory, Sabre promised "to provide this information."

**IV. Torres' Motion in Limine to Preclude Plaintiff's Introduction of Declarations of Alex Rutwaza and Baryamujuru Matsiko as Evidence at Trial [Dkt. No. 388] ("Torres' Motion in Limine No. 4")**

Torres' Motion in Limine No. 4 seeks to exclude as hearsay Sabre's Declaration of Alex Rutwaza ("Rutwaza Declaration") and accompanying Declaration of Baryamujuru Matsiko ("Sabre Matsiko Declaration"). Def.'s Mot. Exs. 1 & 2 [Dkt. No. 388]. Sabre admits that these Declarations are hearsay, but contends that they are admissible under the Residual Exception to the hearsay rules, which provides that "a hearsay statement is not excluded by the rule against hearsay even if the statement is not specifically covered by a hearsay exception in Rule 803 or 804" so long as all of the following criteria are met:

(1) the statement has equivalent circumstantial guarantees of trustworthiness;

(2) it is offered as evidence of a material fact;

(3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and

(4) admitting it will best serve the purposes of these rules and the interests of justice.

Fed. R. Evid. 807.

Sabre has not shown that the Declarations have circumstantial guarantees of trustworthiness equivalent to other exceptions to the hearsay rule. To the contrary, the

-40-

Declarations are self-serving, as they claim outstanding sums of money from both Sabre and Torres. Furthermore, their authenticity is disputed. And, even if genuine, they are not signed in a manner that, if falsely made, would subject Matsiko and Rutwaza to criminal penalties in Uganda, where they were allegedly signed. See Fed. R. Evid. 902(1) and (12).

Finally, the Court has already held that Torres' analogous Declaration of Matsiko must be excluded as untrustworthy hearsay. The interests of justice require exclusion of Sabre's Declarations for the same reason. Torres' Motion in Limine No. 4 shall therefore be **granted**.

## V. Torres' Motion in Limine to Exclude Objectionable Deposition Designations by Sabre [Dkt. No. 391] ("Torres' Motion in Limine No. 5")

Torres' Motion in Limine No. 5 objects to and seeks exclusion of nearly seven hundred pages of deposition designations and exhibits. See generally Def.'s Mot. Exs. 1-5. Sabre claims that the parties have not yet meaningfully met and conferred on these objections. Moreover, neither party has provided any substantive explanations for their respective positions that the designations and exhibits are or are not admissible. Consequently, Torres' Motion in Limine No. 5 shall be **denied without prejudice** to reconsideration after the parties

conduct a more substantive meet and confer on their respective deposition designations. The Court has already limited the parties to **100 exhibits.** It will now limit them to **200 pages of deposition designations.**

**VI.    Torres' Motion in Limine to Preclude Evidence Based on Federal Rules 401, 402, and 403 [Dkt. No. 403] ("Torres' Motion in Limine No. 6")**

Finally, Torres' Motion in Limine No. 6 seeks to exclude two other categories of evidence – evidence of alcohol abuse and employee bonuses – as both irrelevant and substantially more prejudicial than probative under Rules 401-403.

### A.    Evidence of Alcohol Abuse

First, Torres seeks to exclude any "references and innuendoes that [its CEO] Defendant Jerry Torres is an alcoholic and/or abuses alcohol." Def.'s Mot. at 2. In its Opposition, Sabre contends that there is evidence, which it has presented in four exhibits to its Opposition, that Jerry Torres had a "significant alcohol abuse problem." Pl.'s Opp'n at 1. Sabre argues that this evidence is admissible for "impeaching Mr. Torres' credibility." Id.

Rule 608 provides that a "witness's credibility may be attacked . . . by testimony about the witness's reputation for having a character for truthfulness or untruthfulness, or by

−42−

testimony in the form of an opinion about that character." Fed. R. Evid. 608(a). Extrinsic evidence, however, other than a criminal conviction under Rule 609, is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. Fed. R. Evid. 608(b).

As a preliminary matter, three of these four exhibits on which Sabre relies do not even refer to Jerry Torres' alcohol consumption at all. See Pl.'s Opp'n at 2 & Exs. 3-5. Therefore, the only evidence Sabre has identified that refers to Jerry Torres' alleged alcohol abuse is a portion of former Torres employee Christopher Herman's deposition testimony in which he referred to a particular affidavit in a matter which appears to have no relevance to this case. Herman testified that he believed this affidavit contained false allegations because "you could just tell by the text and the wording that it was written by Jerry Torres when he was intoxicated, which was often. And that is a fact." Pl.'s Opp'n, Ex. 6 (Herman tr. at 642:21-643:1).

Given that it is unclear how this affidavit is relevant to the case, or whether it will be introduced by either party, Sabre shall be permitted to use such evidence for only the

-43-

following narrow impeachment purpose: If Torres presents Jerry Torres as a witness, Sabre may impeach his credibility by cross-examining him about the truthfulness of his statements in the affidavit and whether he was intoxicated when he wrote them. See Fed. R. Evid. 608(b) ("[E]xtrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the [witness's] character for truthfulness or untruthfulness."). Herman's testimony regarding Jerry Torres' drinking habits, and any other such evidence, shall otherwise be excluded.

Torres' Motion in Limine No. 6 shall therefore be **granted in part** and **denied in part**, consistent with the foregoing.

### B.    **Evidence of Bonuses**

Torres also seeks to exclude, as irrelevant, any evidence of the bonuses paid to its former Vice President Rebekah Dyer and former CFO Kathryn Jones in 2010 and 2011.

Sabre claims that these bonuses "are relevant to Ms. Dyer's and Ms. Jones' motivation for taking improper actions to conceal Torres' price reductions and Torres' breaches under Count 2[.]" Pl.'s Opp'n at 3. Count 2, however, is a claim for

-44-

breach of contract. It is well-established that motive is irrelevant to a claim for breach of contract. See, e.g., Athridge v. Aetna Cas. & Sur. Co., No. 96-2708, 2001 WL 214212, at *3 (D.D.C. Mar. 2, 2001) ("[M]otive is irrelevant to a breach of contract action[.]"), aff'd, 351 F.3d 1166 (D.C. Cir. 2003); Thyssenkrupp Materials, Inc. v. W. Bulk Carriers A/S, No. 13-1248, 2014 WL 335595, at *1 (S.D.N.Y. Jan. 22, 2014) ("[M]otive is 'generally irrelevant in breach of contract actions.'") (citations omitted). Therefore, the bonuses are not relevant to Sabre's breach of contract claim in Count 2.

Sabre also argues that the bonuses are relevant to its claims for conversion of property in Count 18. The record establishes that, sometime after March 31, 2012, Torres converted $150,000-worth of equipment belonging to Sabre by selling it to a third party. See Mem. Op., dated Aug. 20, 2014, at 67 [Dkt. No. 373]. Sabre contends that Dyer and Jones were directly involved in these activities, and were thereafter "handsomely rewarded with substantial annual bonuses for 2010 of $1,773,139 for Ms. Dyer and $79,077 for Ms. Jones." Pl.'s Opp'n at 4.

The Court recently granted summary judgment for Sabre insofar as it seeks to hold Torres liable for conversion of

property in Count 18 but denied summary judgment on Sabre's claim for punitive damages. See Mem. Op., dated Aug. 20, 2014, at 67 [Dkt. No. 373]. In a Memorandum Opinion dated October 30, 2014, issued concurrently with this Memorandum Opinion, the Court granted summary judgment for Jones on Count 18 and denied summary judgment with respect to the claims against Dyer and Jerry Torres. Consequently, the only conversion claims that remain pending are the claims against Dyer and Jerry Torres and the claim for punitive damages.[17]

Even assuming that motive is relevant to these claims, the conversion of equipment at issue did not occur until after the completion of the JSS Shield Task Order on March 31, 2012. See Mem. Op., dated Aug. 20, 2014, at 61 [Dkt. No. 373]. Sabre fails to establish how bonuses paid in December 2010 and 2011 are relevant to a tort that did not occur until after March 31,

---

[17] Under District of Columbia law, "[p]unitive damages may be awarded 'only if it is shown by clear and convincing evidence that the tort committed by the defendant was aggravated by egregious conduct and a state of mind that justifies punitive damages[]' . . . such as maliciousness, wantonness, gross fraud, recklessness and willful disregard of another's rights.'" Chatman v. Lawlor, 831 A.2d 395, 400 (D.C. 2003) (citations omitted).

2012. Based on this timeline, the Court concludes that the bonuses are not relevant to the outstanding conversion claims.[18]

In sum, the bonuses are not relevant. Consequently, Torres' Motion in Limine No. 6 shall be **granted** insofar as it seeks to exclude evidence of bonuses received by Dyer and Jones for the years 2010 and 2011.

For the foregoing reasons, Torres' Motion in Limine No. 6 shall be **denied** to the limited extent Sabre seeks to use Herman's testimony regarding Jerry Torres' intoxication for the limited impeachment purpose identified by the Court, and shall otherwise be **granted.**

---

[18] Sabre points to a series of emails dated November 28, 2010, in which Torres personnel, including Dyer, discussed the equipment at issue in light of the Government's recent decision to extend the Task Order at JSS Shield by an additional six months. See Pl.'s Opp'n, Ex. 16. In particular, Sabre relies on statements by Dyer and Jerry Torres opining that the equipment could not be removed from the Task Order site until it was closed. See id. at 2. These statements do not suggest that Dyer was then planning to convert Sabre's property much less that such a plan had anything to do with her annual bonus.

## VII. Conclusion as to Torres' Motions in Limine

For all of the foregoing reasons, Torres' Motions in Limine Nos. 1-6 shall be **granted in part** and **denied in part** as set forth above. An Omnibus Order shall accompany this Memorandum Opinion.

October 30, 2014

_Gladys Kessler_
Gladys Kessler
United States District Judge

**Copies to: attorneys on record via ECF**